LUNDY ET AL., APPELLANTS, *v.* LEDERLE LABORATORIES, DIVISION OF AMERICAN CYANAMID CO., ET AL., APPELLEES.

(No. 88AP-451—Decided October 25, 1988.)

*Price, Berry & Shoemaker, John F. Berry, Morton & Hessler* and *Robert J. Hessler,* for appellants.

*Squire, Sanders & Dempsey, Greg-* ory *Lashutka, Mitchel B. Axler* and *Robin G. Weaver,* for appellee Lederle Laboratories.

*Lane, Alton & Horst, Theodore M. Munsell* and *John A. Fiocca, Jr.,* for appellee Carl Greever, M.D.

*Mark Ochsenbein,* prosecuting attorney, and *William S. Cole,* for appellee Board of Health, Jackson County Combined General Health District.

BROWN, J. Plaintiffs, Roy Lee Lundy and his wife Janet Lundy, appeal from the Franklin County Court of Common Pleas, which dismissed their complaint upon grounds of the statute of limitations. They raise a single assignment of error as follows:

"The trial court erred in dismissing the complaint on the grounds that this action is time-barred by R.C. 2305.11(A)."

For the reasons that follow, we affirm in part and reverse in part.

Because this appeal concerns the propriety of the trial court's ruling on a Civ. R. 12(B)(6) motion to dismiss, we accept the factual allegations of plaintiffs' complaint as true. The unfortunate history of this case begins in March 1977, when the plaintiffs' son was administered a dosage of Sabin trivalent oral polio vaccine ("TOPV") by defendant, Dr. Carl Greever. At the time, Greever was associated with defendant Board of Health of Jackson County Combined General Health District. The vaccine was manufactured by the third defendant, Lederle Laboratories.

TOPV allegedly can cause those in close contact with the recipient of the vaccine to contract polio. The complaint contains the following relevant factual allegations:

"7. Each of these defendants knew or should have known that the administration of a TOPV could itself

not only cause the recipient to become a victim of paralytic disease but could cause those in close physical contact, particularly parents, to become victims of the paralytic disease.

"8. About April 12, 1977, Roy Lundy began to experience symptoms including fever, malaise, headaches, myalgia, demalgia and diarrhea. On April 16, 1977, Mr. Lundy was seen by his family physician and was given a flu shot. Twenty-four hours later, he was having a great deal of difficulty getting from a squatting position and a great deal of weakness. By April 19, 1977, it was discovered that the weakness had developed to the point where Mr. Lundy required assistance with both standing up and rising from a squatting position and required the use of a catheter. By that time, he was unable to move his left arm and leg. He was sent to and admitted immediately to Mercy Hospital in Portsmouth, Ohio, on April 19, 1977 for diagnosis and testing. The admitting records state the initial diagnosis was partial paralysis of the left side of his body and symptoms similar to that of the flu.

"9. On April 25, 1977, Mr. Lundy was transferred to Ohio State University Hospital in Columbus, Ohio, and remained there for further testing and treatment until July 2, 1977. At Ohio State University Hospital, a diagnosis was made that Mr. Lundy had poliomyelitis and that it was a Type III polio virus. * * *"

These factual allegations provide the basis for plaintiffs' claims that the defendants are liable for causing Roy Lundy to become paralyzed. These claims are grounded mainly in the negligence of the doctor and the board of health in failing to warn of the possible side effects of TOPV, and of Lederle in marketing an unsafe product. The complaint was filed on March 13, 1987.

Subsequently, defendants Greever and the board of health filed motions to dismiss under Civ. R. 12(B)(6). These defendants asserted that the plaintiffs' claims are time-barred by the statute of limitations found in R.C. 2305.11(A) and (B). Defendant Lederle did not file a motion to dismiss.

Plaintiffs thereafter filed a "Memorandum in Opposition to Defendants' Motion to Dismiss." In this memorandum, plaintiffs made certain factual statements which had not been made in the complaint.

In finding the motions to dismiss to be well-taken under R.C. 2305.11(A), the trial court relied upon the new factual matters contained in plaintiffs' memorandum. In a written decision, the trial court accepted the following dates as being supported by the facts:

"March 24, 1977, Plaintiffs' child was administered a dosage of Sabin trivalent oral polio vaccine.

"*Between April 25, 1977 and July 22, 1977, Plaintiff was diagnosed as having polio and learned that it was caused by the vaccine that had been administered to his child.*

"*On September 27, 1985, Plaintiff first realized that he should have been warned about the dangers of contracting polio and that Defendants' failure to warn him gave rise to a legal claim. Plaintiff served a 180-day letter within the year that followed this date.*" (Emphasis added.)

The emphasized information is in the record solely as a result of plaintiffs' memorandum. Using the foregoing facts, the trial court determined that plaintiffs' claims were not timely filed.

In a subsequent judgment entry, the lower court dismissed the complaint "as to all Defendants," although Lederle had not filed a motion to dismiss.

With regard to the trial court's dismissal of plaintiffs' claims against Lederle, plaintiffs' assignment of error is well-taken. Lederle did not file a motion to dismiss and plaintiffs were

given no notice of the trial court's intent to dismiss those claims. There is some authority for the view that the trial court on its own motion can dismiss a complaint for failure to state a claim. Regardless of whether the trial court has such authority, in particular with regard to waivable defenses, if that authority did exist, the trial court would at a minimum be required to give the plaintiffs notice of its intent to dismiss the complaint and allow the plaintiffs an opportunity to respond in some way, by amendment or otherwise, to the assertion that the complaint is defective. In this case, the trial court erred, at the least, in dismissing the claims against Lederle without giving notice of its intent to do so.

With regard to Greever and the board of health, an analysis of plaintiffs' assignment of error is complicated by the unusual record before this court. The complaint itself contains no reference to plaintiffs' discovery of the defendants' negligence, and the trial court relied upon facts asserted only in plaintiffs' memorandum below. On a Civ. R. 12(B)(6) motion to dismiss for failure to state a claim, the trial court is usually limited to those assertions made on the face of the complaint.

Nonetheless, on appeal, plaintiffs make absolutely no contention that the trial court was in error to rely on factual matters beyond the face of the complaint. Indeed, plaintiffs in their brief and oral argument have recognized the correctness of the facts relied upon by the trial court. At this stage of the proceedings, there is no doubt that plaintiffs have conceded these facts. Accordingly, we review the trial court's dismissal of plaintiffs' claims with these conceded facts in mind.

There is some dispute in this case as to which statute of limitations is applicable to these claims. The trial court applied the medical malpractice statute of limitations found in R.C. 2305.11(A) to dismiss plaintiffs' claims. Whether the trial court's application of R.C. 2305.11(A) constituted prejudical error must be determined through separate analysis of Roy and Janet Lundy's claims.

For the purposes of Roy Lundy's claims, we need not decide whether the trial court erred in applying R.C. 2305.11(A), because we find that no prejudice resulted in any case. It is debatable whether the malpractice limitations period should apply to Roy Lundy's claims. He was not the patient of Greever and, therefore, would not seem to be the alleged victim of "malpractice." Nonetheless, if the malpractice statute did not apply, the bodily injury statute of limitations found in R.C. 2305.10 would apply. Both the malpractice statute and the bodily injury statute have "discovery" components. When either of these statutes is applied to the facts conceded by the plaintiffs, Roy Lundy's claims against Greever and the board of health are time-barred.

The discovery rule for medical malpractice claims is found in *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St. 3d 1, 516 N.E. 2d 204, paragraph one of the syllabus. Under that rule, the following matters must be determined:

"* * * [W]hen the injured party became aware, or should have become aware, of the extent and seriousness of his condition; whether the injured party was aware, or should have been aware, that such condition was related to a specific professional medical service previously rendered him; and whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition. * * *"

Given the plaintiffs' concession that Roy Lundy "learned [in 1977] that [his polio] was caused by the vaccine

that had been administered to his child," Mr. Lundy's claims are clearly barred under *Hershberger*. The condition had manifested itself to a substantial degree, and Mr. Lundy had learned that it was attributable to the specific medical service of the doctor who had administered the vaccine. Further, the presence of the polio condition, when considered in light of Mr. Lundy's knowledge as to causation, would put a reasonable person on notice for the need for further inquiry. We have no difficulty in concluding that plaintiff Roy Lundy's claims accrued in 1977. Under the malpractice statute of limitations, Roy Lundy's claims against Greever and the board of health are time-barred.

Similarly, under the bodily injury statute, Roy Lundy's claims are also time-barred. The discovery rule for R.C. 2305.10 was stated in *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St. 3d 84, 4 OBR 335, 447 N.E. 2d 727, paragraph two of the syllabus, as follows:

"When an injury does not manifest itself immediately, the cause of action does not arise until the plaintiff knows or, by the exercise of reasonable diligence should have known, that he had been injured by the conduct of defendant, for purposes of the statute of limitations contained in R.C. 2305.10."

The discovery rule of *O'Stricker* has been said to relate to the discovery of the legal injury, *Barker* v. *A.H. Robins Co.* (Jan 17, 1985), Franklin App. No. 84AP-297, unreported, a conclusion which is perhaps put in jeopardy by *Hershberger*. For the purposes of this case, we assume that discovery of legal injury is the test.

In *Barker,* this court noted the two-part analysis of the *O'Stricker* discovery rule found in *Viock* v. *Stowe-Woodward Co.* (1983), 13 Ohio App. 3d 7, 12, 13 OBR 8, 13, 467 N.E. 2d 1378, 1384:

"This 'discovery rule,' as articulated by the Supreme Court in *O'Stricker, supra,* is a two-pronged rule requiring both prongs to be satisfied before the statute of limitations begins to run. First, a plaintiff must know or reasonably should have known that he has been injured; and second, a plaintiff must know or reasonably should have known that his injury was proximately caused by conduct of the defendant. Upon actual knowledge or reasonable cause shown to have knowledge of these factors imputed as a matter of law, the limitation period in R.C. 2305.10 begins to run. * * *"

Although the relevant standard is legal injury, as the *Barker* court noted, in certain cases the discovery of the causal relationship between the plaintiff's physical injury and the defendants' conduct is the equivalent of the discovery of legal injury, "since when a person discovers the causal relationship between a physical injury and use of a product, necessarily, he may infer a defective or negligently manufactured product, unless the physical injury is known and anticipated to be the natural and probable result of the use of the product." *Barker, supra,* at 10.

Under this analysis, Roy Lundy's discovery in 1977 that his polio was attributable to the vaccine was sufficient to cause the bodily injury limitations period to begin to run. He knew he had polio and knew of the involvement of the vaccine. A reasonable person in no way could anticipate that polio is a natural and probable result of a vaccine. Under such circumstances, Roy Lundy, at a minimum, should have known at that point of his legal injury. In short, we conclude that Roy Lundy's claim against Greever and the board of health arose in 1977, more than two years prior to the filing of the complaint. Whichever of the two possibly applicable statutes of limita-

tions applies, Roy Lundy's claims are time-barred.

Mrs. Lundy's claims for loss of consortium are also time-barred. Although the trial court erred in applying the malpractice limitations period to Mrs. Lundy's loss of consortium claims, those claims are nonetheless barred when the correct statutory period is applied. Loss of consortium claims are governed by the four-year limitations period found in R.C. 2305.09(D). As stated in *Hershberger, supra,* at paragraph two of the syllabus:

"The statute of limitations for a loss of consortium claim is initiated on the same date that the statute of limitations for the spouse's medical malpractice claim begins to run."

We have determined, *supra,* that the limitations period on Roy Lundy's claim began running in 1977, regardless of whether his claims are considered to be for malpractice or for bodily injury. If the claims are considered to be for malpractice, then Mrs. Lundy's claims are clearly barred under the second paragraph of the *Hershberger* syllabus. If Mrs. Lundy's claims are considered to be for bodily injury, her claims are likewise barred, even if she is given the benefit of the delayed accrual rule found in the same *Hershberger* syllabus. In short, Mrs. Lundy's claims for loss of consortium are time-barred.

Finally, defendant Greever argues that the trial court could have dismissed plaintiffs' claims upon the ground that a nonpatient cannot state a cause of action against a physician for "medical malpractice." Because this argument was neither raised in nor ruled upon by the trial court, we do not decide the question of the legal viability of the legal theories asserted by the plaintiffs against Greever and the board of health.

In conclusion, we sustain plain-

tiffs' assignment of error in part, only with regard to plaintiffs' claims against Lederle. We reverse the trial court's dismissal of the complaint concerning claims against Lederle, but we affirm said dismissal with regard to the dismissal of the claims asserted against Greever and the board of health. This cause is remanded to the trial court for further proceedings consistent herewith.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

McCormac and Bowman, JJ., concur.

William F. Brown, J., retired, of the Coshocton County Court of Common Pleas, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.