**MEEKER, Appellant,**

v.

**AMERICAN TORQUE ROD OF OHIO, INC. et al.; American Cyanamid Company et al., Appellees.**

[Cite as *Meeker v. Am. Torque Rod of Ohio, Inc.* (1992), 79 Ohio App.3d 514.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–1042.

Decided April 30, 1992.

*Bernard K. Bauer Co., L.P.A., Bernard K. Bauer; Stewart R. Jaffy Co., L.P.A.,* and *Stewart R. Jaffy,* for appellant.

*Vorys, Sater, Seymour & Pease, Richard D. Schuster* and *Laurence K. Ryan,* for appellee American Cyanamid Company.

*Walter, Haverfield, Buescher & Chockley, W. Mowry Connelly* and *Frederick W. Whatley,* for appellee Whittaker Corporation.

PETREE, Judge.

Plaintiff, Russell W. Meeker, Jr., appeals from the judgment of the Franklin County Court of Common Pleas, which granted summary judgment in this products liability action to defendants, Whittaker Corporation and American Cyanamid Company. The trial court found that plaintiff's claims were barred by the statute of limitations contained in R.C. 2305.10. On appeal, plaintiff presents the following assignment of error:

"The trial court committed error prejudicial to the plaintiff-appellant by concluding, as a matter of law, that the statute of limitations on his product liability claims, for his occupational disease, 'began to run no later than June 15, 1987.' "

Plaintiff filed a complaint in the common pleas court on June 17, 1988 against defendants American Torque Rod of Ohio, Inc., ATRO Engineering, and George R. Sturmon, alleging that these former employers had wrongfully exposed him to various hazardous chemicals at his job. While these chemicals began to cause plaintiff to experience some adverse physical symptoms as early as 1985, plaintiff alleged that it was not until October 1987 that he reasonably discovered that his injury was a direct and proximate result of chemical exposure in the workplace. After civil discovery proceeded, plaintiff requested leave on August 4, 1989 to amend his complaint to add products liability claims against two new defendants, Whittaker Corporation and Amer-

ican Cyanamid Company, the alleged manufacturers and marketers of the hazardous chemicals. The trial court granted leave to amend on August 8, 1989 and plaintiff filed an amended complaint that very same day. The complaint set forth two products liability claims against defendants Whittaker and American Cyanamid for their failure to adequately warn of the unreasonably dangerous properties of their chemicals.

Defendants Whittaker and American Cyanamid both moved for summary judgment on the basis of the applicable statute of limitations, R.C. 2305.10.[1] The trial court granted the motions, expressly rejecting plaintiff's theory that the two-year limitations period had not run because of the so-called discovery rule. The court reasoned that the evidence submitted showed that plaintiff discovered his alleged injury on July 15, 1987. Consequently, since plaintiff's products liability claims were not filed until August 8, 1989, the court held that the two-year limitations period had expired.

In this appeal, plaintiff contends that the trial court erred in granting summary judgment for defendants because there is a genuine issue of material fact concerning when he actually discovered his injury. Plaintiff maintains that he could not be said to have discovered his injury until October 1987, when his physician diagnosed that plaintiff's physical problems were caused by exposure to defendants' products.

The undisputed facts reveal that from September 1984 through February 1987, plaintiff was the sole employee of American Torque Rod of Ohio, Inc. During that time, he worked in a room in Columbus, Ohio refurbishing motor vehicle suspension system torque rods. The process of refurbishing these torque rods required plaintiff to work closely with defendants' chemicals, including boiling urethane on an oven for hours. At first, he wore no protective safety mask or other gear during the process to guard him against fume inhalation. Later, he began wearing a gas mask that he personally signed out from his Ohio National Guard Unit. Since he was the only person who knew how to perform the novel refurbishing process, he was the person who procured the necessary chemicals to be used in the process. These chemicals included American Cyanamid's products, Cyanaprene and Cyanaset, and Whittaker's product, Thixon. Plaintiff was the person who would have had the manufacturer-provided material safety data sheets for these products, which purport to list any hazardous properties of the chemicals.

---

1. R.C. 2305.10, the generally applicable statute of limitations for torts, provides in pertinent part:
   "An action for bodily injury or injuring personal property shall be brought within two years after the cause thereof arose."

Plaintiff was transferred to his employer's plant in Cuba, Missouri in March 1987 and worked there until he was terminated on June 15, 1987. At the Cuba plant, instead of actually working with the chemicals, plaintiff supervised several employees who refurbished the torque rods themselves. Fresh-air safety mask systems were purchased and provided for these employees.

During his employment, plaintiff first exhibited physical problems in 1985. These consisted of flu-like symptoms and general fatigue. He first reported these symptoms to his employer in December 1985. He was assured by his employer that the chemicals were not causing his problems. Nevertheless, plaintiff's condition worsened. In late 1986, he began experiencing nausea, memory loss, hypersensitivity to smells, and headaches.

While in Cuba, several other employees began experiencing similar symptoms. One employee, Anna Ramistein, became so ill that plaintiff sent her to the hospital. Her doctor eventually told her that she should not work with the chemicals. Plaintiff's employer fired him for sending Ramistein to the hospital because this caused an undue concern in the community. The other employees at the plant refused to work until the workplace was inspected and cleared by federal regulators.

On July 15, 1987, right after being fired, plaintiff went with Ramistein to visit Dr. Fernando J. de Castro to discover whether plaintiff had any problems related to chemical exposure. At the examination, plaintiff complained of difficulty in breathing, sensitivity, memory loss, and rash. He mentioned toluene di-isocyanate, a component of American Cyanamid's product. The parties dispute whether Dr. de Castro indicated that plaintiff had chemical exposure symptoms.

Plaintiff moved back to Columbus in August 1987. On August 3, 1987, he filed an Ohio Bureau of Workers' Compensation Application for Payments of Medical Benefit Only on Form C–3. On the form, plaintiff claimed that he suffered an industrial injury from "chemical exposure." He further listed the chemicals involved as follows: "4,4'–methylene bis 2–chloroaniline, toluene di-isocyanate, methyl ethyl ketone, and Bowanol B6–300 glycol ether acetate."

It is undisputed that these listed chemicals are components of defendants' products which plaintiff used in the refurbishing of torque rods. The chemical components of defendants' products were listed on the material data safety sheets provided to users of the product. Plaintiff testified that he filed for workers' compensation benefits so he could see a doctor who could tell him whether his physical problems were caused by chemical exposure.

Subsequently, plaintiff visited Dr. Gerald Munn for an examination concerning chemical exposure. Dr. Munn, however, felt that he was not qualified to diagnose the problem.

Thereafter, on October 16, 1987, plaintiff filed an application with the Ohio Bureau of Workers' Compensation for recognition of an occupational disease. He indicated his belief that his entire body had been affected by chemical exposure.

One day later, he visited Dr. Sandra M. Stewart–Pinkham. The doctor diagnosed that plaintiff's physical problems were directly and proximately caused by Cyanaprene, Cyanaset, and Thixon, to a reasonable degree of medical certainty. The doctor also said that, because of the insidious nature of the disease symptoms, plaintiff could not know that he was suffering from an occupational disease without appropriate medical diagnosis.

Last, on April 15, 1988, plaintiff filed a sworn affidavit in his workers' compensation proceeding, in which he wrote:

"I became unable to work due to the conditions in my claim on or about June 15, 1987 and have not worked since then."

Pursuant to Civ.R. 56, summary judgment is a " 'procedural device to terminate litigation and to avoid a formal trial where there is nothing to try. It must be awarded with caution, resolving doubts and construing evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion.' " *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 12, 13 OBR 8, 13, 467 N.E.2d 1378, 1383, quoting *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 2, 24 O.O.3d 1, 2, 433 N.E.2d 615, 616. A reviewing court applies this same standard to the evidence that was before the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199.

In *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St.3d 84, 4 OBR 335, 447 N.E.2d 727, the Ohio Supreme Court adopted the discovery rule for determining when a claim of asbestosis arose under the two-year statute of limitations of R.C. 2305.10. The court stated the rule as follows, in paragraph two of the syllabus:

"When an injury does not manifest itself immediately, the cause of action does not arise until the plaintiff knows or, by the exercise of reasonable diligence should have known, that he had been injured by the conduct of defendant, for purposes of the statute of limitations contained in R.C. 2305.-10."

Since *O'Stricker,* the Supreme Court has applied the discovery rule to different types of tort actions, including those for medical malpractice. *Oliver v. Kaiser Community Health Found.* (1983), 5 Ohio St.3d 111, 5 OBR 247, 449 N.E.2d 438; *Richards v. St. Thomas Hosp.* (1986), 24 Ohio St.3d 27, 24 OBR 71, 492 N.E.2d 821; *Hershberger v. Akron City Hosp.* (1987), 34 Ohio

St.3d 1, 516 N.E.2d 204; *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 538 N.E.2d 93; *Herr v. Robinson Mem. Hosp.* (1990), 49 Ohio St.3d 6, 550 N.E.2d 159. In this appeal, the parties debate whether some of the fine points developed in these medical malpractice cases should apply to products liability cases. However, we need not expound on the *O'Stricker* test to any great degree herein.

In *Lundy v. Lederle Laboratories, Div. of Am. Cyanamid Co.* (1988), 54 Ohio App.3d 192, 561 N.E.2d 1027, this court applied the discovery rule to a products liability case involving polio contracted from a childhood vaccination. This court reaffirmed our prior holding in *Barker v. A.H. Robins Co.* (Jan. 17, 1985), Franklin App. No. 84AP–297, unreported, 1985 WL 9826, which recognized that the relevant standard for the discovery rule in this area is plaintiff's knowledge of the legal injury committed by defendant.

The trial court applied the discovery rule in the case *sub judice* and held that July 15, 1987 was the date upon which plaintiff personally believed that he had been injured by chemical exposure. For support, the trial court cited the fact that on that date plaintiff advised Dr. de Castro of plaintiff's exposure to defendants' chemicals. Further, plaintiff's August 3, 1987 application for medical benefits from workers' compensation attributed his injuries to workplace chemical exposure caused by components of defendants' products. Moreover, Dr. Munn's office notes for plaintiff's August 11, 1987 visit indicated that plaintiff was advised by Dr. de Castro that plaintiff had a chemical reaction. Lastly, plaintiff's April 15, 1988 sworn workers' compensation affidavit stated that he had been unable to work since July 15, 1987 due to his workplace chemical exposure.

█ We disagree with the trial court's conclusion concerning plaintiff's beliefs about his injury on July 15, 1987. In formulating this conclusion, the trial court relied in part on plaintiff's workers' compensation affidavit, which was executed on April 15, 1988. Plaintiff's ambiguous statements in this affidavit should not be used to grant summary judgment against him. This affidavit could be reasonably construed to mean that plaintiff believed on that date that he had been injured by chemical exposure. It does not require a conclusion that plaintiff knew all along about his injury. Yet, the trial court used the affidavit as a kind of judicial admission reaching back to July 15, 1987. The trial court erred on this score. For, under the discovery rule, plaintiff's knowledge of his injury should not be measured by the hindsight of the claimant, but the foresight of a reasonable person. See *Moldovan v. Lear Siegler, Inc.* (N.D.Ohio 1987), 672 F.Supp. 1023, 1026 (plaintiff's workers' compensation claim stating he first noticed symptoms of chemical exposure in 1978 was an insufficient basis upon which to grant summary judgment). Cf. *In re "Agent Orange" Product Liability Litigation* (E.D.N.Y.1985), 611

F.Supp. 1285, 1289 (plaintiff's sworn workers' compensation affidavit, stating that in September 1979 he "knew" his disability resulted from chemical exposure, required summary judgment for defendant).

▮ At any rate, we need not directly rule on whether there was other evidence in the record sufficient to charge plaintiff with the requisite knowledge on July 15, 1987. Plaintiff's August 3, 1987 claim for medical benefits from the workers' compensation system clearly precludes a conclusion that claimant did not know of his legal injury in this case.

While no court has formulated a *per se* rule in this regard, courts around the country have found the date of filing of a pertinent workers' compensation claim or other similar occupational disability benefit claim highly relevant, if not dispositive, of the discovery rule issue in insidious disease cases. *Allender v. AKRO Corp.* (Apr. 22, 1985), Stark App. No. CA–6503, unreported, 1985 WL 9198; *Biesterfeld v. Asbestos Corp. of Am.* (N.D.1991), 467 N.W.2d 730, 737–738; *Uram v. Abex Corp.* (1990), 217 Cal.App.3d 1425, 1432–1438, 266 Cal.Rptr. 695, 700–703; *Ackler v. Raymark Industries, Inc.* (1988), 380 Pa.Super. 183, 551 A.2d 291; *Morgan v. Johns–Manville* (1986), 354 Pa.Super. 58, 66–69, 511 A.2d 184, 189–190; *Chandler v. Johns–Manville Corp.* (1986), 352 Pa.Super. 326, 333–335, 507 A.2d 1253, 1257–1259; *Mergenthaler v. Asbestos Corp. of Am.* (Del.Super.1985), 500 A.2d 1357, 1365–1367; *Price v. Johns–Manville Corp.* (1984), 336 Pa.Super. 133, 485 A.2d 466; *Woods v. Sherwin–Williams Co.* (Tenn.App.1983), 666 S.W.2d 77.

Given the undisputed facts in the record concerning plaintiff's involvement with the defendants' chemicals, we find that plaintiff's August 3, 1987 workers' compensation claim warrants summary judgment for defendants.[2] For the foregoing reasons, plaintiff's assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

BOWMAN and DESHLER, JJ., concur.

---

**2.** Civ.R. 15(C) governs the temporal relation back of amendments to pleadings. Under this rule, an amendment adding a *party* will not relate back to the original filing if the applicable statute of limitations has expired in favor of the party to be added. The only exception, not applicable here, is if the new party has had prior notice of the suit and no prejudice would result from allowing the amendment. We find that the action herein, limited by R.C. 2305.10, expired on August 4, 1989, excluding the tolling day of August 3, 1987. Plaintiff filed his motion for leave to amend on August 4, 1987 but did not file his amended complaint until August 8, 1989. It is well established that Civ.R. 3(A) "commencement" is synonymous with the R.C. 2305.10 requirement that the tort claim must be "brought" within two years from the time the claim arose. According to Civ.R. 3(A), a claim is commenced by *filing* it with the court. That occurred here on August 8, 1989, which is more than two years after August 4, 1987. Thus, plaintiff's claims are time-barred.