NOT RECOMMENDED FOR PUBLICATION
File Name: 06a0126n.06
Filed: February 16, 2006

**No. 04-3826**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

SUZANNE K. DUNN,                                          )
                                                         )
        Plaintiff-Appellant,                             )
                                                         )
v.                                                       )    ON APPEAL FROM THE UNITED
                                                         )    STATES DISTRICT COURT FOR
                                                         )    THE NORTHERN DISTRICT OF
ETHICON, INC., JOHNSON & JOHNSON, INC., and              )    OHIO
OWENS & MINOR DISTRIBUTION, INC.,                        )
                                                         )
        Defendants-Appellees.                            )

---

Before:  **NELSON, SILER, and GIBBONS, Circuit Judges.**

**SILER**, Circuit Judge.  Suzanne K. Dunn filed a product liability suit against Ethicon, Inc.,[1]

in Ohio state court.  After Ethicon removed the case to federal court, the district court granted

Ethicon's motion for summary judgment finding that the statute of limitations had expired.  Dunn

claims that the district court incorrectly determined when the statute started to run.  We **REVERSE**

and **REMAND** for further proceedings.

**I.**

---

[1] Ethicon, Inc., is a wholly owned subsidiary of Johnson & Johnson, which Plaintiff also
named as a defendant in her complaint.  Ethcion designs and manufactures the Vicryl brand sutures.
Owens & Minors Distribution, Inc., a distributor and supplier of Vicryl brand sutures, was also
named as a defendant in Plaintiff's complaint.  Hereinafter, "Ethicon" will be used to refer to all of
the defendants unless otherwise indicated.

In September 1999, Dunn underwent a hysterectomy at the University of North Carolina Hospital and her surgeon allegedly used absorbable Vicryl sutures manufactured by Ethicon to close Dunn's vaginal cuff. Her physicians allegedly informed Dunn that she might experience bladder problems and other complications from the surgery. Dunn did, in fact, experience such problems. In January 2001, she was referred to Dr. Patrick J. Shenot, a neuro-urologist when a physician determined that she might have suture material in her bladder. On February 9, 2001, Dr. Shenot performed a flexible cystoscopy and a vaginoscopy, during which he found multiple sutures in Dunn's bladder wall, including one that was looping out of the bladder, extending into the vaginal wall, causing a fistula, or opening, between the bladder and vagina. Dr. Shenot stated that Dunn's incontinence was probably due, in part, to the fistula, but he noted that her symptoms could have been caused by the hysterectomy itself.

On February 15, 2001, Dr. Shenot removed the suture causing the fistula, but left others that were embedded in the bladder wall. At first, her symptoms had significantly improved, but by September 2001, she again reported increased urgency and incontinence. Cystograms performed in October 2001 revealed no new information. Dr. Shenot maintains that although Dunn told him that the original sutures used in her hysterectomy were supposed to be absorbed by the body, he never formed an opinion or told her that they were defective. In fact, he stated that it is difficult for even a physician to identify a defective suture.

On August 18, 2002, Dunn was treated by Dr. Anthony J. Raimonde for what appeared to be a bowel obstruction. He performed a laparotomy and removed a suture from her bowel. Dunn maintains that after this second complication from the hysterectomy, she began to suspect that

something was wrong with the sutures. Before that time, she claims that she felt all her bladder problems were simply normal, but unfortunate, side-effects of the hysterectomy. She filed the instant products liability action in the Summit County Court of Common Pleas on April 1, 2003, alleging that the sutures used in her hysterectomy were defective because they failed to properly dissolve and absorb. After removal, the district court granted summary judgment for Ethicon on the ground that Dunn's claims were time-barred by Ohio's two-year statute of limitations.

**II.**

We review the district court's grant of summary judgment *de novo*. *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citation omitted). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

Under Ohio law, a products liability action for bodily injury "shall be brought within two years after the cause of action accrues." OHIO REV. CODE ANN. § 2305.10(A) (West 2005). The Ohio Supreme Court developed the discovery rule in product liability cases to delay the accrual date for statutes of limitations until the plaintiff knows or should have known she was injured. *O'Stricker v. Jim Walter Corp.*, 447 N.E.2d 727, Syllabus ¶ 2 (Ohio 1983). The discovery rule involves a two-prong test, and the plaintiff must show that she (1) knows or reasonably should have known that her injury was (2) caused by the defendant in order to trigger the statute of limitations. *Viock v. Stowe-Woodward Co.*, 467 N.E.2d 1378, 1384 (Ohio Ct. App. 1983). Additionally, we have held that a plaintiff must be "alerted" to the fact that an implanted medical device is defective. *Griffin v. Am.*

*Med. Sys.*, 106 F.3d 400, 1997 WL 6131, at \*2 (6th Cir. Jan. 7, 1997) (holding that the statute of limitations for a defective prosthesis begins to run as of the day it needed to be removed).

In the case at hand, Dunn was not alerted to the fact that the sutures might be defective until she was diagnosed with having suture material in her bowels. Up to that point, all of her symptoms were bladder-related problems which she thought were normal side-effects of the hysterectomy. Even after she learned in February 2001 that her incontinence was likely due to a suture from her first surgery, she still had no reason to suspect that the presence of this suture was anything other than the bladder problems about which she had been informed. Furthermore, Dr. Shenot did not discuss with her the possibility that the sutures were defective. In fact, he stated that there was no reason why she would have known that the sutures were defective.

However, Dunn was alerted to possibility that the sutures were defective in August 2002 when she learned that her bowel troubles were also caused by the sutures. *See Lundy v. Lederle Labs.*, 561 N.E.2d 1027, 1032 (Ohio Ct. App. 1988) ("[W]hen a person discovers the causal relationship between a physical injury and the use of a product . . . [she] may infer a defective or negligently manufactured product, unless the physical injury *is known and anticipated to be the natural and probable result* of the use of the product.") (emphasis added) (quoting *Barker v. A.H. Robins Co.*, 1985 WL 9826, at \*6 (Ohio Ct. App. Jan. 17, 1985)). At the point when Dunn experienced intestinal, rather than bladder, problems, she should have been aware of her duty to investigate and determine whether the sutures were defective. Accordingly, the two-year statute of limitations did not begin to run until August 2002 and Dunn's claim, filed in April 2003, was timely.

We reject Ethicon's suggestion that we should utilize the "cognizable event" for medical malpractice claims in this case. S*ee Flowers v. Walker*, 589 N.E.2d 1284, 1285, Syllabus (Ohio 1992). Under this test, "[t]he occurrence of a 'cognizable event' imposes upon the plaintiff the duty to (1) determine whether the injury suffered is the proximate cause of malpractice and (2) ascertain the identity of the tortfeasor or tortfeasors." *Id.* at 1285. Constructive knowledge of facts, rather than actual knowledge of their legal significance, is enough to trigger the statute and put the plaintiff on notice to investigate the claim. *Id.* at 1287. In *Flowers*, the Ohio Supreme Court suggested that this test could be used in product liability claims. *Id*. at 1288. Even if we were to utilize the "cognizable event" test, for the reasons stated above, Dunn did not become aware of her injury until she experienced intestinal problems, triggering the statute in August 2002. *See Akers v. Alonzo*, 605 N.E.2d 1, 3-4 (Ohio 1992) ("While *Flowers* . . . holds that the occurrence of the cognizable event imposes a duty of inquiry on the plaintiff, it does not hold that the plaintiff has a duty to ascertain the cognizable event itself."). Accordingly, Dunn's complaint was timely filed.

Because we reverse this case, it is unnecessary to decide whether the statute of limitations was applied unconstitutionally. Additionally, we shall refrain from deciding the merits because those issues were not ruled upon below. *See Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 554-55 (6th Cir. 1998).

REVERSED and REMANDED.

**DAVID A. NELSON**, Circuit Judge, concurring in part and dissenting in part. If this were a medical malpractice action, the time when the statute of limitations began to run would unquestionably be determined under the "cognizable event" test. *Allenius v. Thomas*, 42 Ohio St.3d 131, 538 N.E.2d 93 (1989) (syl.) After oral argument in the case at bar, our panel certified to the Ohio Supreme Court a question as to whether the "cognizable event" rule also governs the accrual of products liability actions involving medical devices.

The Supreme Court declined to answer the question, stating that "the applicable law is settled in Ohio." In light of *Flowers v. Walker*, 63 Ohio St.3d 546, 549, 589 N.E.2d 1284, 1288 (1992), which suggests that "other tort litigation" is governed by the "cognizable event" rule, I take this to mean that the rule applies here just as it would in a medical malpractice action.

Under the "cognizable event" rule, it appears to be immaterial when Ms. Dunn learned that she had suffered a "legal injury," as that term is used in the case on which she principally relies, *Barker v. AH Robins Co.*, 1985 WL 9826 (Ohio App. Franklin 1985). See *Hershberger v. Akron City Hospital*, 34 Ohio St.3d 1, 5, 516 N.E.2d 204, 207 (1987) ("[T]o utilize 'legal injury' might effectuate a complete undermining of the discovery rule . . . .") But see *Lundy v. Lederle Laboratories,* 54 Ohio App. 3d 192, 195, 561 N.E.2d 1027, 1031 (Ohio App. Franklin 1988) (that discovery of legal injury is the test "is perhaps put in jeopardy by *Hershberger*").

The "cognizable event" test focuses on the occurrence of facts and circumstances "which lead, or should lead, the patient to believe that the physical condition . . . of which she complains is related to a medical . . . treatment or procedure that the patient previously received." *Flowers*, 63 Ohio St.3d at 549, 589 N.E.2d at 1287. Such facts and circumstances cannot rise to a level of a "cognizable

event," however, unless they also suffice, or should suffice, to "place the patient on notice of the need to pursue his possible remedies." *Allenius* (syl). If the plaintiff has been alerted to the possibility that a medical device "might be defective," that suffices to start the statute of limitations running. *Griffin v. Am. Med. Sys.*, 1997 WL 6131, ** 1 (6th Cir. 1997).

As far as the case before us is concerned, it is clear that Ms. Dunn learned in February of 2001 — more than two years before she filed suit — that her bladder problems were related to the sutures employed in her earlier surgery. If she also knew, in February of 2001, that the sutures were supposed to be absorbed by the body, it seems to me that the known fact that the sutures had not been absorbed should have alerted her to the possibility that the sutures might have been defective.

Ms. Dunn has denied knowing, in February of 2001, that some sutures are designed to dissolve in the body. Dr. Shenot's testimony, while somewhat ambiguous, suggests otherwise. He testified that from the very beginning he wondered what kind of suture (absorbable or non-absorbable) had been used in the prior surgery. He further testified that he "was surprised that these sutures weren't reabsorbed." And he testified that "I told [Ms. Dunn] that absorbable sutures — when I do bladder surgery we use absorbable sutures and they're usually, you know, reabsorbed." It was precisely because he wanted to see whether absorbable or non-absorbable sutures had been used, Dr. Shenot testified, that he asked Ms. Dunn to get the hospital records on her earlier surgery.

Given Dr. Shenot's testimony, I would not hold, as a matter of law, that the statute of limitations could not have begun to run in February of 2001. The question of when Ms. Dunn first learned about absorbable sutures is of critical importance, I believe, and this question looks to me like

No. 04-3826
Dunn v. Ethicon

one for the jury.  My colleagues on the panel having seen the matter differently, I respectfully dissent

on this issue.  I agree, however, that the case should be returned to the district court.