DAVID A. NELSON, Circuit Judge,
concurring in part and dissenting in part.
If this were a medical malpractice action, the time when the statute of limitations began to run would unquestionably be determined under the “cognizable event” test. Allenius v. Thomas, 42 Ohio St.3d 131, 538 N.E.2d 93 (1989) (syl.) After oral argument in the case at bar, our panel certified to the Ohio Supreme Court a question as to whether the “cognizable event” rule also governs the accrual of products liability actions involving medical devices.
The Supreme Court declined to answer the question, stating that “the applicable law is settled in Ohio.” In light of Flowers v. Walker, 63 Ohio St.3d 546, 549, 589 N.E.2d 1284, 1288 (1992), which suggests that “other tort litigation” is governed by the “cognizable event” rule, I take this to mean that the rule applies here just as it would in a medical malpractice action.
*543 Under the “cognizable event” rule, it appears to be immaterial when Ms. Dunn learned that she had suffered a “legal injury,” as that term is used in the case on which she principally relies, Barker v. AH Robins Co., 1985 WL 9826 (Ohio App. Jan. 17, 1985). See Hershberger v. Akron City Hospital, 34 Ohio St.3d 1, 5, 516 N.E.2d 204, 207 (1987) (“[T]o utilize ‘legal injury’ might effectuate a complete undermining of the discovery rule....”) But see Lundy v. Lederle Laboratories, 54 Ohio App.3d 192,195, 561 N.E.2d 1027, 1031 (Ohio App. 1988) (that discovery of legal injury is the test “is perhaps put in jeopardy by Hershberger”).
The “cognizable event” test focuses on the occurrence of facts and circumstances “which lead, or should lead, the patient to believe that the physical condition ... of which she complains is related to a medical ... treatment or procedure that the patient previously received.” Flowers, 63 Ohio St.3d at 549, 589 N.E.2d at 1287. Such facts and circumstances cannot rise to a level of a “cognizable event,” however, unless they also suffice, or should suffice, to “place the patient on notice of the need to pursue his possible remedies.” Allenius (syl). If the plaintiff has been alerted to the possibility that a medical device “might be defective,” that suffices to start the statute of limitations running. Griffin v. Am. Med. Sys., 1997 WL 6131, *1 (6th Cir.1997).
As far as the case before us is concerned, it is clear that Ms. Dunn learned in February of 2001 — more than two years before she filed suit — that her bladder problems were related to the sutures employed in her earlier surgery. If she also knew, in February of 2001, that the sutures were supposed to be absorbed by the body, it seems to me that the known fact that the sutures had not been absorbed should have alerted her to the possibility that the sutures might have been defective.
Ms. Dunn has denied knowing, in February of 2001, that some sutures are designed to dissolve in the body. Dr. Shenot’s testimony, while somewhat ambiguous, suggests otherwise. He testified that from the very beginning he wondered what kind of suture (absorbable or non-absorbable) had been used in the prior surgery. He further testified that he “was surprised that these sutures weren’t reabsorbed.” And he testified that “I told [Ms. Dunn] that absorbable sutures — when I do bladder surgery we use absorbable sutures and they’re usually, you know, reabsorbed.” It was precisely because he wanted to see whether absorbable or non-absorbable sutures had been used, Dr. Shenot testified, that he asked Ms. Dunn to get the hospital records on her earlier surgery.
Given Dr. Shenot’s testimony, I would not hold, as a matter of law, that the statute of limitations could not have begun to run in February of 2001. The question of when Ms. Dunn first learned about absorbable sutures is of critical importance, I believe, and this question looks to me like one for the jury. My colleagues on the panel having seen the matter differently, I respectfully dissent on this issue. I agree, however, that the case should be returned to the district court.