745 A.2d 525

KAZIMIERZ LAPKA AND EMILIA LAPKA, HIS WIFE, PLAIN-TIFFS–APPELLANTS, v. PORTER HAYDEN COMPANY, FOR-MERLY KNOWN AS H.W. PORTER COMPANY AND REID HAYDEN, AND H.M. ROYAL CO., INC., DEFENDANTS–RE-SPONDENTS, AND THE MANVILLE CORPORATION ASBES-TOS DISEASE COMPENSATION FUND (THE MANVILLE FUND), AS THE RESPONSIBLE DESIGNATED LEGAL ENTI-TY FOR THE LIABILITY OF CANADIAN JOHNS–MANVILLE AMIANTE LTD., FORMERLY CANADIAN JOHNS–MANVILLE ASBESTOS LTD.; JOHNS–MANVILLE SALES CORPORATION SUCCESSOR TO AND IN LIEU OF JOHNS–MANVILLE PROD-UCTS CORPORATION; JOHNS–MANVILLE CANADA INC., FORMERLY KNOWN AS CANADIAN JOHNS–MANVILLE CO. LTD.; JOHNS–MANVILLE CORPORATION; UNION CARBIDE; WHITAKER, CLARK & DANIELS; JOHN DOE CORPORA-

TIONS (A FICTITIOUS NAME REPRESENTING ONE OR MORE CORPORATIONS AND/OR COMPANIES ENGAGED IN THE BUSINESS OF MANUFACTURING, SUPPLYING AND DISTRIBUTING ASBESTOS CONTAINING PRODUCTS, FIBERS AND DUST); AND RICHARD ROE CORPORATIONS (A FICTITIOUS NAME REPRESENTING ONE OR MORE GENERAL CONTRACTORS AT THE PLAINTIFF'S PLACES OF EMPLOYMENT) AND JUDY DOE CORPORATIONS (A FICTITIOUS NAME REPRESENTING ONE OR MORE LEGAL ENTITIES WHO STAND IN THE SHOES OF JOHN DOE, RICHARD ROE EITHER AS SUCCESSOR IN INTEREST, ALTER EGO OR BY OTHER EQUITABLE DOCTRINE WHICH MAKES THEM RESPONSIBLE FOR THE JOHN DOE LIABILITY), DEFENDANTS.

Argued November 30, 1999—Decided February 24, 2000.

*Carl W. Swanson,* argued the cause for appellants (*Lynch Martin Kroll,* attorneys).

*John C. Garde* and *Terrence Smith,* argued the cause for respondents (*McCarter & English,* attorneys for Porter Hayden Company and *McGivney & Klugler,* attorneys for H.M. Royal Co., Inc., attorneys; *Mr. Garde, Mr. Smith* and *Debra M. Perry,* of counsel; *Paul L. Kattas* and *Edward R. Schreiber, III,* on the briefs).

The opinion of the Court was delivered by

VERNIERO, J.

Plaintiffs Kazimierz Lapka and his wife, Emilia Lapka, commenced this action by filing a complaint in the Law Division on March 24, 1988. (In this opinion, the singular plaintiff refers to Kazimierz Lapka.) The complaint alleges injury caused by occupational exposure to asbestos.

We are called on to determine whether the action is barred by the two-year statute of limitations found at *N.J.S.A.* 2A:14-2. That determination requires us to consider the applicability of the "discovery rule," an equitable principle that delays accrual of a cause of action "until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." *Lopez v. Swyer,* 62 *N.J.* 267, 272, 300 *A.*2d 563 (1973).

The trial court and Appellate Division each held that plaintiffs' suit was time-barred. The courts concluded, based on medical records and plaintiff's earlier submission of a workers' compensation claim, that the cause of action accrued more than two years before the suit was filed. We agree and affirm.

## I.

Plaintiff was employed by the Essex Chemical Corporation ("Essex Chemical" or the "company") in Sayreville from 1967 to 1984. He worked as a chemical operator and hot-melt operator. Those jobs required plaintiff to mix a liquid with pigment and asbestos powder in the manufacture of paneling glue. Plaintiff also assisted in the manufacture of other products, including urethane and paint. During the course of his employment, plaintiff was exposed to finished and unfinished asbestos products, dust, particles, fibers, and other hazardous substances.

Plaintiff was first diagnosed with a lung ailment as a result of a chest x-ray taken on February 13, 1981. The radiologist who examined the x-ray made this notation in the patient's record: "OPINION: Findings of pulmonary emphysema with mild diffuse fibrotic lung changes as well." We note that "[c]ontinuous breathing of asbestos-laden air will cause an eventual concentration of the particles in the lung tissue ... [and] ... the noxious effect of these rock particles causes the body to set up an inflammation until eventually fibrosis occurs." *Sloane–Dorland Annotated Medical–Legal Dictionary* 285 (1987).

About one week later, on February 21, 1981, plaintiff was admitted to Raritan Bay Medical Center complaining of shortness of breath. Another chest x-ray was taken on February 22, 1981 that showed, according to notations in the medical record, that plaintiff suffered from "pleural thickening" and "increased markings within the lungs" compatible with a "previous inflammatory disease."

Upon plaintiff's discharge from the hospital on March 1, 1981, his treating physician, Dr. Thaddeus A. Balinski, rendered a final diagnosis, noting in the patient's discharge papers: "pulmonary fibrosis and emphysema." Dr. Balinski also signed and submitted a physician's supplementary statement to plaintiff's insurance carrier. Consistent with Dr. Balinski's earlier diagnosis, the supplementary statement dated June 29, 1981, indicated a diagnosis of "emphysema."

Plaintiff went on disability leave in 1981. The loss prevention manager for Essex Chemical, Karl J. Trommler, Jr., expressed concern about returning plaintiff to the position of hot-melt operator in view of his diagnosed condition. In a letter dated July 7, 1981 to Dr. Balinski, Trommler described plaintiff's work environment and asked Dr. Balinski to "help me to decide what placement is in Mr. Lapka's best interest from a health standpoint." Trommler noted that as a hot-melt operator, plaintiff would add raw materials to the hot-melt reactor and thereupon be exposed to hot air, fumes, coal tar, various hydrocarbon groups, and trace impurities driven off during the heating process.

Dr. Balinski replied in a letter dated August 3, 1981, stating: "I believe that in the best health and interest of Kazimierz Lapka, he not be returned to his regular job but to another job that we discussed in a less toxic area." That belief was consistent with an earlier opinion expressed by the company physician, Dr. Francis X. Urbanski. Dr. Urbanski stated in a July 23, 1981 letter to Trommler: "The distinct possibility of future occupational inhalation exposure could possibly cause aggravation to his pulmonary status. Suitable occupational placement in the future must include a work environment that prevents any possibility of significant inhalation exposure."

Plaintiff returned to work in a new position, that of chief operator. That job required him to receive and record data concerning certain reactors at the company.

Plaintiff was again admitted to the Raritan Bay Medical Center on June 6, 1984. At the time he was experiencing shortness of breath, weight loss, and general weakness. At the medical center, he was again diagnosed with chronic obstructive pulmonary disease ("COPD"). An x-ray confirmed that diagnosis. On the patient's admitting form, Dr. Balinski noted that plaintiff "work[ed] in a chemical factory [and was] possibl[y] allerg[ic] to some chemicals and [would] feel[ ] [shortness of breath] while working."

Plaintiff signed a workers' compensation claim petition on January 14, 1986. The petition, a two-page form, is printed and made available by the Division of Workers' Compensation (the "Division") pursuant to *N.J.S.A.* 34:15–51. The form requires a petitioner to fill in specific information about a claim. The upper portion of the form states in pre-printed text:

> Petitioner [plaintiff], alleging that the Petitioner sustained an injury by an accident arising out of and in the course of petitioner's employment with Respondent [Essex Chemical], compensable under R.S. 34:15–7 et seq., supplements and amendments, respectfully states:

In the space on the petition labeled DESCRIBE EXTENT AND CHARACTER OF INJURY, plaintiff filled in the following information: "PETITIONER SUSTAINED PULMONARY, AND INTERNAL ORGAN DISABILITY; AS WELL AS BINAURAL LOSS OF HEARING AND BILATERAL EYE DISABILITY." On that part of the form labeled DATE OF ACCIDENT OR DATES OF OCCUPATIONAL EXPOSURE, plaintiff stated: "1967 to June 5, 1984." In the space on the petition labeled WHERE, plaintiff stated: "Respondent's premises." In the space on the form labeled HOW, plaintiff stated: "PETITIONER EXPOSED TO ASBESTOS, NOISE AND CHEMICALS." In the space on the form labeled DATE INJURY REPORTED TO EMPLOYER AND TO WHOM, plaintiff stated: "Respondent had constructive notice."

An attorney from the law firm of Franz and Mintz notarized plaintiff's signature, which appears at the bottom portion of page two of the petition. Consistent with standard oath-taking language, the text immediately preceding the attorney's signature provides: "STATE OF NEW JERSEY/COUNTY OF MIDDLE-SEX: ss/Subscribed and sworn or affirmed to before me this 14th day of JANUARY, 1986."

Plaintiff filed the claim petition with the Division on February 13, 1986. Thereafter, plaintiff's attorneys requested that Dr. Malcolm H. Hermele examine plaintiff. The examination occurred on March 24, 1986. Dr. Hermele summarized his examination and

conclusions in a letter to Franz and Mintz dated the same date. Dr. Hermele's letter states in part:

> At your request, I examined Kazimierz Lapka in my office on March 24, 1986. He gave me the following history:
>
> Mr. Lapka was employed by Essex Chemical Corp. from 1967 to May, 1984 as a chemical operator. He was exposed to dust, fumes, dirt, asbestos, carbon monoxide, chemicals used in plastic products, petroleum products, paints, powders, solvents, acetone and extremes in temperature....
>
> Mr. Lapka complains of coughing, bringing up phlegm, experiencing shortness of breath. Patient cannot climb one flight of stairs without shortness of breath and uses two pillows at night in order to be able to sleep and breathe properly. On getting up in the morning, patient has coughing fits which go on for quite a while and are productive of a whitish yellow phlegm. All the above complaints have been going on for more than 2 years....
>
> ....
>
> *Conclusions:* Based upon the history and the physical examination it is my opinion that Kazimierz Lapka has emphysema, restrictive pulmonary disease and small airways disease for which I would estimate a permanent disability of 65% of total. Based upon the history it is my opinion that the chest condition is causally related to or exacerbated by the exposure to the above pulmonary noxious agents while employed by Essex Chemical Corp.

As noted in the letter, Dr. Hermele reached his conclusions based upon a physical examination and the patient's history, which was given to him by plaintiff.

Plaintiff was again admitted to Raritan Bay Medical Center on November 2, 1996. The admitting attendant prepared plaintiff's personal history sheet, noting on the sheet: "stoped [sic] working in 1984 when he was diagnosed [with] asbestos." The form also indicates that the history so noted was given by "patient and patient's wife." Plaintiff's patient chart also includes this entry: "[a]ccording to patient and his wife, this pt [patient] has H/O [history of] emphysema & asbestosis & silicosis since '84." Another entry indicates that plaintiff "had h/o [history of] COPD for > 20 yr, c [with] asbestosis silicosis diagnosed about 12 years ago." Plaintiff died on November 3, 1996. The record does not reveal the cause of death.

Plaintiffs filed their complaint in the Law Division on March 24, 1988. It alleges that plaintiff contracted "chronic asbestos and/or pulmonary disease" and suffered other injuries during the course

of his employment as a result of being "continuously exposed to both products containing finished and unfinished asbestos products, dust, particles and fibers." Plaintiffs later amended the complaint to include defendants Porter Hayden Company and H.M. Royal Co., the designated legal entities of certain manufacturers and suppliers of asbestos-containing products. Essex Chemical was named as a defendant in the original complaint for purposes of obtaining discovery only.

The trial court dismissed the complaint as untimely on November 24, 1997. (After the notice of appeal was filed in the Appellate Division, the Law Division judge vacated a previous order permitting the substitution of plaintiff Emilia Lapka as Executrix of the Estate of Kazimierz Lapka. The parties' briefs to this Court retained the earlier caption.) The Appellate Division affirmed in an unreported decision. The panel concluded that plaintiff knew his condition was asbestos-related "at least as of the date he signed and filed his workers' compensation petition in January 1986." The court also determined that, because the workers' compensation petition "unquestionably established plaintiff's knowledge of the essential facts," no evidentiary hearing was required as might otherwise be conducted in keeping with the procedures outlined in *Lopez, supra,* 62 *N.J.* 267, 300 *A.2d* 563. We granted plaintiffs' petition for certification, 158 *N.J.* 687, 731 *A.2d* 47 (1999).

## II.

The statute of limitations governing this action is found at *N.J.S.A.* 2A:14-2, which states:

Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued.

[*Ibid.*]

Applying discovery rule principles to this statute, we must ask: Did plaintiffs file suit within two years from the date they discovered, or by the exercise of reasonable diligence and intelligence should have discovered, the basis for an actionable claim?

According to defendants, the hospital records demonstrate that plaintiff knew that he had been exposed to asbestos no later than 1984, and knew also that he was suffering from work-related respiratory problems. They emphasize that, in January 1986, plaintiff signed the workers' compensation petition specifying that he suffered from a pulmonary condition related to occupational exposure to asbestos. Thus, defendants argue that the medical records, together with the filing of the workers' compensation claim, indicate that plaintiffs knew or should have known that they had a basis to sue more than two years before the complaint was filed.

Plaintiffs counter that the entries in the hospital records do not establish that either of them believed in 1984 that plaintiff suffered from asbestosis. Alternately, they argue that even if the hospital records are viewed as establishing that plaintiff knew about asbestosis in 1984, those records do not establish that he had, in fact, been so diagnosed. In their view, the records do not conclusively show that plaintiff believed in 1984 that he suffered from an asbestos-related illness. With respect to the workers' compensation petition, plaintiffs assert that because plaintiff was not diagnosed specifically with asbestosis until March 24, 1986, the date of Dr. Hermele's examination, the petition does not mark their discovery of the cause of action.

We conclude that the record establishes that plaintiff knew or should have known that he had a basis for a claim more than two years before the complaint was filed. As early as 1981, plaintiff's treating physician, Dr. Balinski, stated to the company manager that plaintiff should be transferred into a "less toxic area." The company physician, Dr. Urbanski, concurred. Other parts of the record, including the 1996 hospital admitting forms, indicate that plaintiff knew enough by 1984 to prompt diligent inquiry as to whether the exposure to workplace substances was having a deleterious effect on his health.

Plaintiff's workers' compensation petition leaves no doubt as to the state of his knowledge as of the date of that petition, January

14, 1986. The petition unambiguously alleges occupational exposure to asbestos as a cause of plaintiff's injury. It also avers that the company "had constructive notice" of both the asserted injury and its cause. It logically follows that if the company had such notice, so too did plaintiff for purposes of any subsequent action.

■ By statute, a workers' compensation petition must be "verified by the oath or affirmation of the petitioner." *N.J.S.A.* 34:15–51. The respondent's answer must be similarly verified. *N.J.S.A.* 34:15–52. The intent of these verification provisions "is that in proceedings brought before the Division the issues be narrowed by specific averments supported by factual contentions." *Conway v. Mister Softee, Inc.,* 51 *N.J.* 254, 261, 239 *A.2d* 241 (1968). On the facts presented, we cannot overlook the information contained in plaintiff's sworn petition without jeopardizing the integrity of the petition itself.

Courts in other jurisdictions are in wide agreement that a sworn and signed workers' compensation petition cannot be disavowed by a plaintiff subsequently seeking to establish a lack of knowledge. *See, e.g., Ackler v. Raymark Indus.,* 380 *Pa.Super.* 183, 551 *A.2d* 291, 293 (1988) (stating that "it is not necessary that the exact nature of his injury be known so long as it objectively appears that he is reasonably charged with the knowledge that he has an injury caused by another"); *Price v. Johns–Manville Corp.,* 336 *Pa.Super.* 133, 485 *A.2d* 466 (1984) (affirming the importance of averments contained in a sworn and signed workers' compensation petition when determining plaintiff's knowledge of asbestos exposure); *Meeker v. American Torque Rod of Ohio, Inc.,* 79 *Ohio App.*3d 514, 607 *N.E.2d* 874 (1992) (holding that workers' compensation claim averring chemical exposure sufficient to establish plaintiff's knowledge).

■ Plaintiffs suggest that the discovery rule delays accrual of an action until a claimant acquires an exact medical diagnosis of an asserted condition. We disagree. We impute discovery if the plaintiff is aware of facts that would alert a reasonable person to the possibility of an actionable claim; medical or legal certainty is

not required. As we explained in *Burd v. New Jersey Tel. Co.,* 76 *N.J.* 284, 291, 293, 386 *A.*2d 1310 (1978):

> It was not our intent ... to hold that a claimant's time to sue, for limitations purposes, does not begin to run until he knows or is advised by a lawyer that facts of which he does, or should, reasonably have knowledge, give rise to a legal cause of action against a particular defendant. The statute of limitations necessarily imputes conclusively to a claimant knowledge that the law affords or may afford a cause of action on the basis of those facts of injury and causal relationship which in law do evoke a cause of action. In this regard it is of no consequence whether the cause of action arises in the field of products liability or any other aspect of tort law, or as to the degree of expertise which different lawyers possess in one such field or another. The discovery principle modifies the conventional limitations rule only to the extent of postponing the commencement of accrual of the cause of action until plaintiff learns, or reasonably should learn, the existence of that *state of facts* which may equate in law with a cause of action.
>
> ....
>
> .... The proofs need not evoke a finding that plaintiff knew for a certainty that the factual basis was present. It is enough that plaintiff had or should have discovered that he "may have" a basis for the claim.

*See also Savage v. Old Bridge–Sayreville Med. Group,* 134 *N.J.* 241, 248, 633 *A.*2d 514 (1993) (providing that discovery will be imputed when an injury has occurred and there exists the awareness of "facts that would alert a reasonable person exercising ordinary diligence that a third party's conduct *may* have caused or contributed to the cause of the injury and that conduct itself might possibly have been unreasonable or lacking in due care").

Although cited by plaintiffs in support of their argument, the letter by Dr. Hermele is consistent with a finding that plaintiffs' cause of action accrued more than two years in advance of the filing of the complaint. That letter chronicled plaintiff's history at Essex Chemical, including the fact that he was exposed to asbestos as well as other noxious agents. By the terms of the letter, Dr. Hermele was provided such history by plaintiff himself. That suggests that, prior to the date of the examination, plaintiff knew, or his records revealed, that exposure to asbestos caused or at least contributed to his injury.

Dr. Hermele examined plaintiff on March 24, 1986, two years to the day prior to the filing of plaintiffs' Law Division action. The inference is plain, if not compelling: to provide personal history to

Dr. Hermele for use in the examination, plaintiff must have had knowledge of facts or access to pertinent information in advance of that date. Within that time frame, plaintiff's knowledge or awareness of facts would mark the accrual of the cause of action at a point outside of the allowable limitations period.

Plaintiffs urge a different conclusion, relying in part on *Vispisiano v. Ashland Chem. Co.*, 107 *N.J.* 416, 527 *A.*2d 66 (1987). The plaintiff there sought recovery of damages for injuries resulting from his exposure to toxic chemical waste during his employment at a toxic-waste disposal site. Although the record in *Vispisiano* contained information allowing the plaintiff to draw a causal connection between his symptoms and occupational exposure to toxins, his doctors discouraged the belief that there was a connection sufficient to form the basis of a cause of action. The plaintiff persisted in learning the cause of his symptoms and eventually obtained the proper diagnosis. On those facts, we held that plaintiff's suit was not untimely in accordance with the discovery rule.

We did not hold in *Vispisiano* that medical confirmation of plaintiff's injury in a toxic tort case is necessary for a cause of action to accrue. Indeed, we carefully noted the distinction between "some reasonable medical support" and "medical confirmation," requiring only the former for purposes of imputing discovery. *Id.* at 437, 527 *A.*2d 66. We explained: "[W]e do not insist on medical confirmation as such: a physician's willingness to include chemical poisoning in the differential diagnosis would probably suffice, as would any other reasonably reliable source of information." *Ibid.* The record here contains numerous indications of plaintiff's condition, including plaintiff's own averments contained in the workers' compensation petition. The record amply provides "some reasonable medical support" in respect of plaintiffs' claim; thus, our conclusion is in accord with *Vispisiano*.

### III.

In *Lopez, supra,* 62 *N.J.* at 274–76, 300 *A.*2d 563, we outlined the procedures to be followed by a trial court when

conducting a preliminary hearing to determine the facts underlying an asserted application of the discovery rule. We indicated that when credibility is not involved, affidavits, with or without depositions, may suffice as the basis for the trial court's finding. *Id.* at 275, 300 *A.2d* 563. We agree with the Appellate Division that because the record here unquestionably establishes plaintiff's awareness of the essential facts, no formal hearing was necessary to resolve the discovery rule issue.

■■■■ We hold that plaintiffs' suit is time-barred by the provisions of *N.J.S.A.* 2A:14–2 and that the discovery rule does not operate on these facts to delay the accrual of the cause of action. Because the discovery rule, at its root, is a rule of equity, we must consider elements of fairness pertaining to all parties, not just to those asserting the benefits of the rule.

> After all, statutes of limitations are statutes of repose and the principal consideration underlying their enactment is one of fairness to the defendant.... It is not every belated discovery that will justify an application of the rule lifting the bar of the limitations statute. The interplay of the conflicting interests of the competing parties must be considered.
>
> [*Id.* at 274–75, 300 *A.2d* 563.]

We sympathize with the plight of any worker exposed to hazardous substances. However, we are bound to principles of fairness and equity that serve to protect all litigants. We are satisfied that those principles require us to affirm the judgment below.

### IV.

Accordingly, the judgment of the Appellate Division is affirmed.

STEIN, J., dissenting.

The Court bars plaintiffs' products liability claim on statute of limitations grounds, relying primarily on typed language in a workers' compensation claim petition that included "asbestos," as well as "noise" and "chemicals," among the substances to which decedent's exposure allegedly contributed to his work-related disability. The uncontroverted medical evidence in this record reveals that none of the many physicians that had examined dece-

dent ever had associated his pulmonary condition with asbestos exposure, suggesting that the reference to asbestos on the claim petition was gratuitous and without foundation. Nevertheless, exalting literalism over substance, the Court bars plaintiffs' product liability suit, and in the process diminishes the significance of this Court's ruling in *Vispisiano v. Ashland Chemical Co.,* 107 *N.J.* 416, 527 *A.*2d 66 (1987).

In *Vispisiano,* this Court reversed a summary judgment in favor of defendants on statute of limitations grounds because the facts were insufficient to put the plaintiff on notice that exposure to chemicals at work might have caused the injuries that were the subject of his suit. We held that "before a toxic-tort-case plaintiff may be deemed, in a discovery rule context, to have the requisite state of knowledge that would trigger the running of the statute of limitations [plaintiff's] impression of the nature of the injury and of its cause must have some reasonable medical support." *Id.* at 437, 527 *A.*2d 66 (internal quotations omitted). The underlying facts in *Vispisiano* were adduced at a *Lopez* hearing, used to determine when a plaintiff knew or had reason to know of the existence of a cause of action. *Lopez v. Swyer,* 62 *N.J.* 267, 300 *A.*2d 563 (1973).

Plaintiffs will not be afforded that procedural protection because the Court's opinion concludes that "the record here unquestionably establishes plaintiff's awareness of the essential facts" necessary to find that plaintiffs knew or reasonably should have known of their cause of action. Because the products liability complaint was filed on March 24, 1988, the Court holds that the statute of limitations bars plaintiffs' claim because decedent knew or should have known of the existence of his cause of action when he filed a workers' compensation petition on January 14, 1986. Although plaintiffs' attorney did not specifically request a *Lopez* hearing in response to defendants' summary judgment motions, this record demonstrates that a *Lopez* hearing was required to afford plaintiffs an opportunity to establish that the discovery rule should preclude defendants' statute of limitations defense.

I

Kazmierz Lapka began working for Essex Chemical Corporation (Essex Chemical) in 1967. On February 9, 1981, Lapka left work for an extended period due to health problems. After undergoing a chest x-ray on February 13, 1981, he initially was diagnosed with pulmonary emphysema with mild diffuse fibrotic lung changes. Complaining of pain, shortness of breath, and a cough, Lapka was admitted to the Raritan Bay Medical Center on February 21, 1981. In a report dated February 29, 1981, Dr. Francis Urbanski, Essex Chemical's physician, concluded that Lapka suffered from mild restrictive and moderate large airway obstructive ventilatory impairment with severe small airway obstruction. Urbanski also expressed reservations about Lapka's return to work as a "hot melt operator." Lapka was discharged on March 1, 1981, with a final diagnosis of pulmonary fibrosis and emphysema. That diagnosis was based in part on chest x-rays that demonstrated "bilateral apical pleural thickening" and "increased markings within the lungs." Pulmonary fibrosis is a medical condition involving inflammation and scarring of the lung tissue. Among its known causes are occupational or environmental exposure, vapors, certain drugs, radiation, and infection. Asbestos exposure, although a possible cause of pulmonary fibrosis, is hardly the exclusive cause. Exposure to other chemicals or toxic substances may also cause or contribute to that condition. *Current Medical Diagnosis & Treatment* 306–07 (Lawrence M. Tierney, Jr. et al. eds., 38th ed.1999).

On June 29, 1981, Dr. Thaddeus Balinski, Lapka's personal physician, completed an Attending Physician's Supplementary Statement in connection with Lapka's claim for medical coverage that listed his condition as "emphysema." On July 7, 1981, the Loss Prevention Manager at Essex Chemical discussed with Dr. Balinski his concern about Lapka returning to his job. Dr. Balinski concurred with Dr. Urbanski's recommendation that Lapka not return to his previous job, but to a different job "in a less toxic area." On July 23, 1981, Dr. Urbanski completed a Return

to Work Evaluation that noted that Lapka had a "long history of smoking at least one pack of cigarettes each day, but ... he stopped smoking on February 9, 1981." Based on the results of two evaluations and a pulmonary function test, Dr. Urbanski concluded that the "clinical findings indicate that pulmonary emphysema is not present but, rather, the studies illustrate reverseability [sic] of the employee's ventilatory impairment and demonstrates [sic] that, in the absence of any environmental exposure, values have returned to normal."

On a Medical–Work History form completed on May 23, 1982, Lapka reported that he had emphysema and shortness of breath after minimal exertion, but did not report any tightness or constriction of the chest or lungs. A Professional Health Services report dated June 16, 1983, contained pulmonary test results that noted Lapka's "forced vital capacity is normal, indicating no restrictive problem ... but flow rates are depressed, suggesting a possible early stage mild obstructive deficiency." Another Physical Examination and Evaluation report on Lapka dated August 1, 1983, noted that he was "employable or can continue to work in exposure to chemical or physical stresses" and was "physically able to use personal protective equipment, including respirator."

On February 13, 1984, Lapka returned to Dr. Balinski for treatment. Dr. Balinski diagnosed emphysema and COPD (chronic obstructive pulmonary disease) on the Attending Physician's Statement Health Insurance Claim used in connection with Lapka's treatment. In June 1984, Lapka returned to the hospital. Lapka's admitting and final diagnosis was COPD. That diagnosis was based on a chest x-ray and pulmonary function tests that "showed mild airway obstruction, with small airway disease."

On June 6, 1985, Dr. Charles Brancato "strongly suggested" that Lapka be put on permanent disability because pulmonary function tests completed earlier in the year revealed a " 'moderate to severe airway obstruction', a marked worsening as compared to the previous tests dated June 12, 1984." Those January 1985 tests were supervised by Dr. N. Reddy who acknowledged in a

letter dated January 29, 1985, to Essex Chemical that Lapka had a history of COPD and was "not suited for the work in which he is involved with [sic]." The chest x-ray from those tests revealed a number of small calcifications in the lungs that were deemed "compatible with previous granulomatous disease."

On January 14, 1986, Lapka filed a petition for workers' compensation benefits. The claim form was neatly typed and specific information surrounding Lapka's injury was provided as follows:

Date of Accident or Dates of Occupational Exposure:

1967 to June 5, 1984

Where:

Respondent's premises

How:

PETITIONER EXPOSED TO ASBESTOS, NOISE AND CHEMICALS

Occupation:

Laborer–Operator

Date Stopped Work:

June 5, 1984

Date Returned to Work:

———

Date Injury Reported to Employer and to Whom:

Respondent had constructive notice

In the next section of the claim form, "DESCRIBE EXTENT AND CHARACTER OF INJURY," the form noted that "PETITIONER SUSTAINED PULMONARY, AND INTERNAL ORGAN DISABILITY; AS WELL AS BINAURAL LOSS OF HEARING AND BILATERAL EYE DISABILITY." The petition is signed by Lapka and Paul Franz, an attorney at law.

On March 24, 1986, Lapka was examined by Dr. Malcolm Hermele at the request of Franz and Mintz, Esqs. In his report to Franz and Mintz dated the same day, Hermele noted in Lapka's Past Medical History that Lapka had a "history of Emphysema and Bronchitis." Hermele described Lapka's work environment, specifically referring to *twelve* different potential work-related sources of his disability, including asbestos, but without attempting to identify the more suspect of those sources:

Mr. Lapka was employed by Essex Chemical Corp. from 1967 to May, 1984 as a chemical operator. He was exposed to *dust, fumes, dirt, asbestos, carbon monoxide, chemicals used in plastic products, petroleum products, paints, powders, solvents, acetone and extremes in temperature.* He was required to do much bending, lifting, standing and manipulation of his hands and feet while on the job. In addition to the physical stress and strain of his job, he was under considerable emotional stress and tension as he competed to get his particular job accomplished.

[ (emphasis added).]

Hermele noted the multiple breathing difficulties that Lapka experienced and concluded that Lapka's "chest condition is causally related to or exacerbated by the *exposure to the above pulmonary noxious agents* while employed by Essex Chemical Corp." (Emphasis added). Hermele also concluded that "[b]ased upon the history and the physical examination it is my opinion that Kazimierz Lapka has emphysema, restrictive pulmonary disease and small airways disease for which I would estimate a permanent disability of 65% of total."

On April 7, 1987, Lapka was awarded $23,800 based on a 33 and 1/3rd% permanent/partial pulmonary disability due to emphysema, restrictive pulmonary disease and small airways disease in an Order Approving Settlement by the Division of Workers' Compensation. On August 10, 1992, Lapka was awarded an additional $27,200 because his partial/total disability due to chronic obstructive pulmonary disease with severe emphysema was increased to 50%.

On August 23, 1988, Dr. Matthew H. Smith, at the request of Jane Cantor, Esq., evaluated Lapka for occupational lung disease. For the first time since Lapka's earliest medical examinations relating to his pulmonary condition, Dr. Smith specifically addressed Lapka's exposure to asbestos:

[F]rom the beginning of his employment until 1976 [Lapka] mixed a liquid with pigment and asbestos powder in the manufacture of paneling glue. The surrounding equipment and the air around him was heavily laden with asbestos dust and particulate matter, and the patient was never offered a filter mask. He has no other occupational exposures of which he is aware.

With regard to the remainder of his pulmonary symptoms, he was a one pack per day smoker for 15 years quitting in 1952.

. . .

My impression is that Mr. Lapka does suffer from asbestos related disease. This is manifested by his progressive exertional dyspnea, his history of exposure, and his absence of cardiac or other causes.

On November 2, 1996, Lapka was again admitted to Raritan Bay Medical Center. Lapka's chart noted that "according to patient & his wife, this pt [patient] has H/O [history of] emphysema & asbestosis & silicosis since '84." Other chart notations indicated that "[h]e has h/o COPD for >20 yrs, [with] asbestosis silicosis diagnosed about 12 years ago" and that Lapka "smoked IPPD for 40 yrs. Quit 7 yrs ago. Used to work in chemical plant (?) for 17 yrs. stop in 1984 when was dx [diagnosed] as having asbestosis/silicosis (?)." Lapka died on November 3, 1996.

## II

A cause of action accrues when a plaintiff "learns, or reasonably should learn, the existence of that state of facts which may equate in law with a cause of action." *Burd v. New Jersey Tel. Co.,* 76 *N.J.* 284, 291, 386 *A.*2d 1310 (1978) (internal emphasis omitted). Where a plaintiff does not know or have reason to know that he or she has a cause of action, the cause of action will not accrue "until [plaintiff] discovers, or by an exercise of reasonable diligence and intelligence should have discovered [the] basis for an actionable claim." *Viviano v. CBS, Inc.,* 101 *N.J.* 538, 546, 503 *A.*2d 296 (1986); *see also Lopez, supra,* 62 *N.J.* at 272–73, 300 *A.*2d 563. "In order to start the statute of limitations [in a complex medical malpractice case], more is required than mere speculation or an uninformed guess 'without some reasonable medical support' that there was a causal connection." *Mancuso v. Neckles,* 163 *N.J.* 26, 34, 747 *A.*2d 255 (2000) (quoting *Vispisiano, supra,* 107 *N.J.* at 437, 527 *A.*2d 66). The discovery rule avoids inequitable results that would flow from a mechanical application of the relevant statute of limitations. *O'Keeffe v. Snyder,* 83 *N.J.* 478, 491, 416 *A.*2d 862 (1980); *Fernandi v. Strully,* 35 *N.J.* 434, 449–50, 173 *A.*2d 277 (1961).

The pertinent statute of limitations required the complaint to be filed within two years after the cause of action accrued. *N.J.S.A.*

2A:14–2. "[T]he purpose of statutes of limitations is to stimulate litigants to pursue their causes of action diligently." *Vispisiano, supra,* 107 *N.J.* at 426, 527 *A.*2d 66. Because of the latent characteristics and difficulty in diagnosis associated with a toxic-tort illness, we articulated in *Vispisiano* the standard that would start the statute of limitations running for a toxic-tort plaintiff:

> [B]efore a toxic-tort-case plaintiff may be deemed, in a "discovery rule" context, to have the requisite state of knowledge that would trigger the running of the statute of limitations[,] *his impression of the nature of the injury and of its cause must have some reasonable medical support* [, therefore,] we are convinced that defendants were not entitled to summary judgment. We hasten to add that we do not insist on medical confirmation as such: a physician's willingness to include chemical poisoning in the differential diagnosis would probably suffice, as would any other reasonably reliable source of information.
>
> [*Id.* at 437, 527 *A.*2d 66 (emphasis added).]

Similarly, this matter requires us to examine the record carefully in search of evidence that Lapka knew or should have known that his condition was causally related to asbestos and that that knowledge was based on some reasonable medical support, mindful of the fact that the burden of proof rests with the party claiming the use of the discovery rule. *Id.* at 432, 527 *A.*2d 66; *Lopez, supra,* 62 *N.J.* at 276, 300 *A.*2d 563.

### III

Lapka did not receive a medical diagnosis that his injuries were causally related to asbestos exposure until Dr. Smith stated that fact in his letter of August 23, 1988. Although a medical diagnosis is not required to confirm that Lapka knew or should have known of his condition's cause, *Vispisiano, supra,* 107 *N.J.* at 437, 527 *A.*2d 66, Lapka had received multiple medical diagnoses that informed him that his injuries were a result of pulmonary fibrosis or emphysema, not asbestosis. During Lapka's early medical history, he received those different diagnoses as well as medical advice that he could "continue to work in exposure to chemical or physical stresses." Even in 1985, Lapka's "worsening" test results were deemed "compatible with previous granulomatous disease." No medical diagnoses ever mentioned asbestos or asbesto-

sis as a cause of Lapka's injuries. Because Lapka was never informed that asbestos was the cause of his injuries, Lapka was never given "the impression of the nature of his injury" from any of the doctors that examined him. Therefore, Lapka's knowledge concerning the accrual of a cause of action cannot definitively be determined by the written documentation in the record.

The earliest date that Lapka may have been put on notice that his injuries were caused by asbestos was March 24, 1986, the date of the report produced by Dr. Hermele in support of Lapka's petition for workers' compensation benefits. However, even that report's reference to "asbestos" as one of twelve noxious substances to which Lapka was exposed at work falls far short of the *Vispisiano* standard of "reasonable medical support."

As did the Appellate Division, the Court places significant emphasis on Lapka's workers' compensation petition in which Lapka sought benefits based on his exposure to "asbestos, noise, and chemicals." Although the petition conceivably could be considered as some evidence that Lapka may have suspected that asbestos caused his injuries, a more reasonable inference is that Lapka's attorney's insertion of asbestos as a possible cause of Lapka's pulmonary condition was merely an uninformed generalization included in the form to provide possible support for the workers' compensation claim. We note that Dr. Hermele was retained by Lapka's counsel to support Lapka's petition for workers' compensation benefits and that the Order Approving Settlement issued by the Division of Workers' Compensation incorporated Hermele's diagnosis of "emphysema, restrictive pulmonary disease and small airways disease." In approving the settlement, the Division of Workers' Compensation did not make a finding that Lapka suffered from asbestosis.

A better rule for determining the date of accrual of knowledge of a toxic-tort plaintiff who has filed a worker's compensation claim was adopted by the Texas Supreme Court in *Childs v. Haussecker*, 974 *S.W.*2d 31, 42–43 (1998). Relying on this Court's

decision in *Vispisiano, supra,* 107 *N.J.* 416, 527 *A.*2d 66, the Texas Supreme Court observed:

> [A]lthough several courts have adopted [the] position that the filing of a worker's compensation claim or lawsuit alleging that the plaintiff has an occupational injury begins the statute of limitations running as a matter of law, we believe this rule, while not without some appeal, does not necessarily reflect accurately the plaintiff's knowledge in every case. Rather than demonstrating what a plaintiff actually knows or should have known, an occupational injury claim or suit may be filed by an overly cautious plaintiff merely because of that layperson's unfounded suspicions or belief that an injury is related to a particular exposure.... This being the case, a latent occupational disease cause of action should not be deemed to accrue absent some objective verification of a causal connection between injury and toxic exposure.... Accordingly, a diligent plaintiff's mere suspicion or subjective belief that a causal connection exists between his exposure and his symptoms is, standing alone, insufficient to establish accrual as a matter of law.
>
> [*Childs,* 974 *S.W.*2d at 42–43 (citations omitted).]

Although the Court does not adopt a *per se* rule that a workers' compensation petition necessarily triggers the running of the statute of limitations, the claim petition in the context of this record does not support the Court's conclusion that Lapka knew his occupational exposure to asbestos was the cause of his injuries. The Court's conclusion simply is inconsistent with the extensive evidence of Lapka's prior medical evaluations and reports that conspicuously omit any reference whatsoever to asbestos exposure as a cause of Lapka's pulmonary condition. *Cf. Ackler v. Raymark Indus. Inc.,* 380 *Pa.Super.* 183, 551 *A.*2d 291, 292 (1988) (demonstrating that petition alleged "in detail the nature of his illness as asbestosis ... the dates on which his injury occurred, the location, the nature of his occupation, and what he was doing that caused his asbestosis"); *Price v. Johns–Manville Corp.,* 336 *Pa.Super.* 133, 485 *A.*2d 466, 467 (1984) ("Mr. Price argued that his disability from asbestosis was total" on appeal to the Workmen's Compensation Appeal Board); *Meeker v. American Torque Rod of Ohio, Inc.,* 79 *Ohio App.*3d 514, 607 *N.E.*2d 874, 876 (1992) (explaining that plaintiff specifically listed the chemicals that caused his injuries).

Finally, Lapka's November 1996 hospital records do not assist us in determining Lapka's state of knowledge. Lapka was first specifically informed in 1988 that he suffered from an asbestos related disease. After acquiring that knowledge, Lapka and his

wife may have assumed that his deteriorating physical condition had been caused by asbestos, and told the attending doctor as much hoping that that information might save Lapka's life. Lapka died the day after he was admitted to the hospital in 1996. Additionally, although the notations on Lapka's chart that stated that patient had had a history of emphysema, asbestosis, and silicosis since 1984 and that he had been diagnosed with asbestosis and silicosis twelve years previously may accurately have reflected what the plaintiffs told the attending physician, this record demonstrates unequivocally that the plaintiffs' recollection was inaccurate because no such diagnosis had ever been made before 1988. Accordingly, the 1996 hospital records provide little assistance in determining when Lapka knew or reasonably should have known that asbestos was a cause of Lapka's injuries.

## IV

For the reasons stated, I would reverse the judgment of the Appellate Division and remand this matter to the Law Division to conduct a *Lopez* hearing to determine whether the discovery rule precludes dismissal of the complaint on statute-of-limitations grounds.

Justice O'HERN joins in this opinion.

*For affirmance*—Chief Justice PORITZ and Justices GARIBALDI, COLEMAN, LONG and VERNIERO—5.

*For reversal and remandment*—Justices O'HERN and STEIN—2.