**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2672-22

IRA RUSSACK, individually, MARC
RUSSACK, individually, AGHARTA
RR FLETCHER LLC, a Delaware
limited liability company, AGHARTA
FLETCHER HOLDINGS LLC, a
Delaware limited liability company,
AGHARTA FLETCHER MEZZ LLC,
a Delaware limited liability company,
CROSBY 44 STREET REALTY LLC,
and AGHARTA REALTY LLC, a
Delaware limited liability company,

      Plaintiffs-Appellants,

v.

LIPOT ROSENBERG, individually,
LR MANAGEMENT GROUP LLC,
a New York limited liability company,
AGHARTA RR FLETCHER SUB LLC,
a Delaware limited liability company,

      Defendants,

and

JEFFREY LEVITIN, individually,
LEVITIN & ASSOCIATES, PC,
FLETCHER OFFICE CENTER LLC, a

Delaware limited liability company,
FLETCHER MGR LLC, a Delaware
limited liability company, J&D
PRINCETON LLC, a New Jersey
limited liability company, 9W
CORPORATE PLAZA MANAGER
LLC, a Delaware limited liability
company, FLETCHER AVENUE
MEMBER LLC, a Delaware limited
liability company, F-W FLETCHER LLC,
a limited liability company, and
JOSEPH FRIEDLAND, individually,

     Defendants-Respondents.

_____

Argued May 22, 2024 – Decided April 15, 2025

Before Judges Gummer and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000073-22.

Conrad M. Olear argued the cause for appellants (Strasser & Associates, PC, attorneys; Conrad M. Olear, of counsel and on the briefs).

Steven R. Vanderlinden argued the cause for respondents Jeffrey Levitin and Levitin & Associates, PC (Aronsohn Weiner Salerno & Kaufman PC, attorneys; Steven R. Vanderlinden, on the brief).

Fred R. Gruen argued the cause for respondents Fletcher Office Center LLC, Fletcher MGR LLC, J&D Princeton LLC, 9W Corporate Plaza Manager LLC, Fletcher Avenue Member LLC, F-W Fletcher LLC, and

Joseph Friedland (Gruen & Goldstein, attorneys; Fred R. Gruen, on the brief).

The opinion of the court was delivered by

GUMMER, J.A.D.

Plaintiffs appeal from three orders granting on statute-of-limitations grounds defendants' motions to dismiss pursuant to Rule 4:6-2(e) and an order denying plaintiffs' subsequent reconsideration motion. Because the trial court erred in dismissing plaintiffs' non-defamation claims against the law-firm defendants without conducting an evidentiary hearing pursuant to Lopez v. Swyer, 62 N.J. 267 (1973), we vacate the orders as to those claims and remand the case for proceedings consistent with this opinion. We otherwise affirm.

I.

Plaintiffs filed the complaint initiating this lawsuit on April 19, 2022. Plaintiffs identified and described themselves as Ira Russack, a real estate investor and majority owner of the plaintiff entities; Mark Russack, a real estate investor, minority owner of the plaintiff entities, and son of Ira[1]; and Agharta RR Fletcher LLC, Agharta Fletcher Holdings LLC, Agharta Fletcher Mezz LLC,

---

[1] Because of their shared last name, we use the first names of the individual plaintiffs to reference them. We do so for ease of reading and intend no disrespect.

and Agharta Realty LLC, entities formed by defendant Jeffrey Levitin, Esq., "for the purpose of owning an interest in the real property located at 2200 Fletcher Avenue" in Fort Lee. According to plaintiffs, Agharta Realty LLC owned 44% of the property.

Plaintiffs named as defendants: Levitin and Levitin & Associates, a law firm owned and operated by Levitin (collectively the Levitin defendants); Fletcher Office Center LLC, Fletcher MGR LLC, J&D Princeton LLC, 9W Corporate Plaza Manager LLC, Fletcher Avenue Member LLC, F-W Fletcher LLC, and Joseph Friedland (collectively the Friedland defendants); and Lipot Rosenberg, LR Management Group, and Agharta RR Fletcher Sub LLC (collectively the Rosenberg defendants). According to plaintiffs, Rosenberg was the sole owner and member of LR Management Group, and Agharta RR Fletcher Sub LLC was formed by Rosenberg and Levitin without plaintiffs' knowledge to own an interest in plaintiff Agharta RR Fletcher LLC. Plaintiffs described Friedland as the manager of J&D Princeton LLC and Fletcher Avenue Member LLC, the authorized signatory of Agharta Realty LLC and Fletcher MGR LLC, and a participant involved in the purchase of the property and the alleged defrauding of plaintiffs.

In the complaint, plaintiffs alleged Rosenberg, whom Ira knew from previous real-estate transactions, had approached Ira in January 2016 and advised him he knew someone who was looking for an investor in the purchase of the property. Plaintiffs believed Friedland was that individual and that Friedland had enlisted Rosenberg to help him find another investor. According to plaintiffs, Rosenberg represented to Ira that the property was going to be purchased for approximately $40,000,000, the buyer needed an investor who could provide cash at the closing in exchange for an ownership interest in the property, and if Ira contributed $6,000,000, he would own 54% of the property. Plaintiffs alleged Levitin represented Ira's interests in connection with the transaction and did not tell him he and his firm were performing legal work for Rosenberg in connection with the transaction.

Plaintiffs claimed unbeknownst to Ira, Levitin and Rosenberg "were concocting a confusing web of entities to comprise the ownership structure that not only deprived [Ira] of a 54% ownership interest in the Fort Lee property, but also fraudulently provided . . . Rosenberg with a 40% ownership interest in the entity which would co-own the Fort Lee property." According to plaintiffs, Ira did not receive any documents regarding the purchase of the property after the February 25, 2016 closing, and he was "completely in the dark about the

transaction after signing all the assignments and documents presented to him by Levitin in the beginning of February." Plaintiffs alleged their repeated demands for copies of the closing documents were ignored and that "recently, upon [Ira's] decision to terminate his relationship with Levitin . . . Levitin finally provided [p]laintiffs with certain documents relative to the transaction whereby [p]laintiff became aware of . . . the fraud that had been perpetrated by Levitin, Rosenberg and the other investors in the property." Plaintiffs asserted they had become aware for the first time that Agharta Realty LLC owned only a 44% interest in the property on receiving a copy of the deed.

Plaintiffs pleaded eleven causes of action in their complaint. In count one, entitled "Partition and Demand for Accounting," plaintiff Agharta Realty LLC, claiming it owned 44% of the property as a tenant-in-common with defendant Fletcher Office Center LLC, sought a judgment against defendant Fletcher Office Center LLC, compelling the sale of the property, a partition of the property pursuant to N.J.S.A. 2A:56-2 and distribution of the sale proceeds, and an accounting from "the management company of the subject real property"[2] of

---

[2] Whether plaintiffs named "the management company of the subject real property" as a defendant isn't clear from the complaint. Plaintiffs did not describe any of the named defendants as "the management company of the subject real property."

disbursements and distributions made in connection with the property since February 25, 2016. In count two against the Rosenberg defendants, plaintiffs sought a judgment declaring Ira had a 99% interest and Marc had a 1% interest in the plaintiff entities.

In count three, plaintiffs alleged defendants Rosenberg, Levitin, Friedland, and the Friedland entities had engaged in intentional fraud, making "representations which they knew to be false . . . for financial gain and to extort money from" plaintiffs.

In court four, entitled "Professional Negligence/Legal Malpractice," plaintiffs alleged the Levitin defendants had a "wide ranging" duty to Ira, as his counsel in the transaction, and had breached that duty by "failing to act in [p]laintiffs [sic] best interests, representing two clients in the same transaction with differing interests, failing to advise [p]laintiffs properly regarding various documents created by. . . [d]efendants and purposely defrauding . . . [p]laintiff by creating documents that [p]laintiff did not consent to nor authorize[]." Plaintiffs also faulted the Levitin defendants for "retain[ing] monies which were rightfully [p]laintiffs" and for having "never advised [p]laintiff that [d]efendants were representing . . . Rosenberg in the very same transaction."

A-2672-22

In count five, plaintiffs alleged the Rosenberg defendants had engaged in intentional interference with prospective economic advantage by causing "a cloud on the title of the assets of the [p]laintiff entities" and that defendant 9W Corporate Plaza Manager LLC had "interfere[ed] with the benefits of [p]laintiffs" by "receiv[ing] economic benefits from the property ownership" when it "provided no investment into the initial purchase."

In count six, plaintiffs accused defendants Rosenberg and Levitin of engaging in "extreme and outrageous" conduct and intentionally inflicting emotional distress on Ira and Marc. In count seven, plaintiffs claimed Rosenberg "ha[d] made and continue[d] to make false and defamatory statements related to the [p]laintiffs, including, but not limited to his ownership in the [p]laintiff entities." They alleged Rosenberg had published those defamatory statements "to a third party by executing an Operating Agreement stating ownership in an entity that he knowingly knew was false" and that Levitin had "participated in" that defamation "by creating the . . . Operating Agreement which he knew to be false and fraudulent."

In count eight, plaintiffs alleged defendants had improperly received distributions of funds that should have been given to plaintiffs. In count nine, they asserted defendants had "converted for themselves" plaintiffs' property and

A-2672-22

had "exercised dominion and control of that property, without proper authorization." In count ten, plaintiffs alleged "[p]laintiff was in contractual privity with the [d]efendants" and defendants had "violated the subject contract/agreements by, among other things, not paying [p]laintiff the amount of money rightfully due and owing [p]laintiffs" and "failing to account to [p]laintiff for all monies disbursed related to the subject real property." In count eleven, plaintiffs contended defendants had violated the implied covenant of good faith and fair dealing.

The Levitin defendants, Friedland defendants, and Rosenberg defendants, respectively, moved to dismiss the complaint pursuant to Rule 4:6-2(e). Plaintiffs opposed the motions, submitting the certifications of Ira and his personal assistant.

In his certification, Ira supported many of the factual assertions set forth in the complaint. He also certified he had not "become fully aware" of the "corporate structure" the Levitin defendants had "create[d] in connection with this transaction" until "2020 and 2021." He asserted that "[i]n or about 2021," he had become "aware that [his] ownership interest in the subject property was not 54% as [he] had believed since the closing of title in February of 2016." He also certified he did not receive any of the closing documents after the closing

A-2672-22

and Levitin had refused to provide him with copies of the closing documents and other documents until a July 17, 2020 meeting when Levitin gave Ira a memory stick he said contained the closing documents.

Ira's personal assistant certified she had on numerous occasions over a number of years requested copies of the closing documents from the Levitin defendants, whom she described as "our legal counsel." She also stated Ira's accountants had requested from the Levitin defendants information on the closing. According to the assistant, the Levitin defendants did not provide the requested information until the July 17, 2020 meeting.

After hearing argument, the trial court on December 22, 2022, placed a decision on the record granting the motions. The court held plaintiffs' causes of action were barred by the applicable statute of limitations. The court found the discovery rule did not apply because Ira had been "known to be a savvy investor," "d[one] th[o]se types of transactions before," and, with the exercise of due diligence, should and could have obtained the closing documents and learned of the ownership-share discrepancy earlier.

The next day, the court entered three orders granting defendants' motions. In the order granting the Friedland defendants' motion, the court dismissed all claims against those defendants with prejudice except the claim against

defendant Fletcher Office Center LLC in count one, which the court dismissed without prejudice. As the court explained in its oral decision, plaintiffs potentially in the future could bring partition or accounting actions, if permitted under the operating agreement, based on other issues relating to the operation of the company not at issue in this case but were time-barred from demanding partition based on the allegations made in the complaint.

Plaintiffs moved for reconsideration of the December 23, 2022 orders. The court heard argument, placed a decision on the record denying the motion, and on March 27, 2023, issued an order denying the motion.

This appeal followed. Plaintiffs argue the court should have applied the discovery rule to delay the accrual of the statute of limitations on its claims; it should not have assumed every cause of action in the complaint commenced at the time of closing; it failed to weigh and consider case law related to the motions to dismiss; it inexplicably dismissed counts one and two of the complaint; and it should have conducted a <u>Lopez</u> hearing, to determine the applicability of the discovery rule.

II.

We review de novo a motion to dismiss for failure to state a claim upon which relief can be granted under <u>Rule</u> 4:6-2(e). <u>Baskin v. P.C. Richard & Son,</u>

LLC, 246 N.J. 157, 171 (2021). "A reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Ibid. (quoting Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 107 (2019)). We "accord no deference to the trial judge's legal conclusions." Richter v. Oakland Bd. of Educ., 459 N.J. Super. 400, 412 (App. Div. 2019). We review "a trial court's decision to dismiss a complaint as barred by a statute of limitations" de novo. Barron v. Gersten, 472 N.J. Super. 572, 576 (App. Div. 2022). We review a trial court's order on a reconsideration motion under an abuse-of-discretion standard. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).

Plaintiffs filed their complaint six years, one month, and twenty-five days after the closing date and one year, nine months, and two days after Levitin purportedly gave Ira the closing documents, placing the filing of the complaint, considering only those dates, beyond the longest applicable statute of limitations. See, e.g., N.J.S.A. 2A:14-1 (requiring actions for tortious injury, conversion, or express or implied contractual claims to "be commenced within six years next after the cause of any such action shall have accrued"). Plaintiffs rely on the discovery rule and the doctrine of equitable tolling to explain any

apparent delay in the filing of their complaint. "While the discovery rule postpones the accrual of a cause of action, equitable tolling acknowledges the accrual of the action but tolls the statute of limitations because the plaintiff lacked vital information that was withheld by a defendant." Freeman v. State, 347 N.J. Super. 11, 31 (App. Div. 2002).

Neither the discovery rule nor the doctrine of equitable tolling can save plaintiffs' defamation claims against the Rosenberg and Levitin defendants. Pursuant to N.J.S.A. 2A:14-3, "[e]very action at law for libel or slander shall be commenced within [one] year next after the publication of the alleged libel or slander." In NuWave Investment Corp. v. Hyman Beck & Co., Inc., 221 N.J. 495, 500 (2015), the Court held the discovery rule does not apply to defamation claims because "[t]he statute's clear and unqualified language requires all libel claims to be made within one year of the date of the publication." And even if the discovery rule or equitable tolling could apply legally to plaintiffs' defamation claims, the admitted facts of the case do not support their application. Plaintiffs concede Ira was in possession of the closing documents on July 17, 2020; they inexplicably waited until April 19, 2022, to file their complaint. We affirm the dismissal of plaintiffs' defamation claims and the denial of the reconsideration motion as to those claims.

13

New Jersey courts have long recognized the application of the discovery rule to "prevent the sometimes harsh result of a mechanical application of the statute of limitations." Martinez v. Cooper Hosp.-Univ. Med. Ctr., 163 N.J. 45, 52 (2000). "The discovery rule is 'essentially a rule of equity.'" Catena v. Raytheon Co., 447 N.J. Super. 43, 53 (App. Div. 2016) (quoting Lopez, 62 N.J. at 273). A plaintiff seeking to invoke the application of the discovery rule bears the burden of showing "a reasonable person in her [or his] circumstances would not have been aware, within the prescribed statutory period, that she [or he] had been injured by [the] defendant[']s" conduct. Kendall v. Hoffman-La Roche, Inc., 209 N.J. 173, 197-98 (2012); see also The Palisades At Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC, 230 N.J. 427, 444 (2017).

"The issue that must be determined by the trial judge is whether the party requesting relief is equitably entitled to the benefit of the discovery rule." Heyert v. Taddese, 431 N.J. Super. 388, 435-36 (App. Div. 2013). "[L]egal . . . certainty [is] not required for a claim to accrue." Kendall, 209 N.J. at 193. "The standard is basically an objective one—whether plaintiff knew or should have known of sufficient facts to start the statute of limitations running." Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 134 (2017) (quoting Caravaggio v. D'Agostini, 166 N.J. 237, 246 (2001)) (internal quotation marks omitted). "The

14

fundamental question in a discovery rule case . . . is 'whether the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due to the fault of another.'" J.P. v. Smith, 444 N.J. Super. 507, 527 (App. Div. 2016) (quoting Caravaggio, 166 N.J. at 246).

The "decision [on accrual] requires more than a simple factual determination; it should be made by a judge . . . conscious of the equitable nature of the issue before him [or her]." Id. at 526 (first alteration and omission in the original) (quoting Lopez, 62 N.J. at 275). Because the discovery rule is, at its core, a rule of equity, the court also "must consider elements of fairness pertaining to all parties, not just to those asserting the benefits of the rule." Lapka v. Porter Hayden Co., 162 N.J. 545, 558 (2000); see also J.P., 444 N.J. Super. at 526 (finding "[c]ourts must balance the desire to give innocent injured parties their day in court against the fairness to those who must defend stale claims"). Thus, "not every belated discovery . . . will justify an application of the rule lifting the bar of the limitations statute." Szczuvelek v. Harborside Healthcare Woods Edge, 182 N.J. 275, 281 (2005) (quoting Lopez, 62 N.J. at 275).

"The doctrine of equitable tolling, though similar to the discovery rule, is slightly different. It may be available 'when a plaintiff is misled . . . and as a

result fails to act within the prescribed time limit.'" Bustamante v. Borough of Paramus, 413 N.J. Super. 276, 299 (App. Div. 2010) (omission in original) (quoting Villalobos v. Fava, 342 N.J. Super. 38, 50 (App. Div. 2001)). Only under very limited circumstances may a statute of limitations be equitably tolled: "(1) [if] the defendant has actively misled the plaintiff, (2) if the plaintiff has in some extraordinary way been prevented from asserting his [or her] rights, or (3) if the plaintiff has timely asserted his [or her] rights mistakenly in the wrong forum." Barron, 472 N.J. Super. at 577 (alterations in original) (quoting F.H.U. v. A.C.U., 427 N.J. Super. 354, 379 (App. Div. 2012)) (internal quotation marks omitted).

"Absent a showing of intentional inducement or trickery by a defendant, [equitable tolling] . . . should be applied sparingly and only in the rare situation where it is demanded by sound legal principles and in the interest of justice." Ibid. (alteration and omission in original) (quoting Binder v. Price Waterhouse & Co., L.L.P., 393 N.J. Super. 304, 313 (App. Div. 2007)). "[E]quitable tolling requires plaintiffs to diligently pursue their claims because although it affords relief from inflexible, harsh or unfair application of a statute of limitations, [it] does not excuse claimants from exercising the reasonable insight and diligence

required to pursue their claims." Ibid. (alteration in original) (quoting Binder, 393 N.J. Super. at 313) (internal quotation marks omitted).

Applying those equitable principles, we affirm the dismissal of the claims against the Rosenberg[3] and Friedland defendants and the denial of the reconsideration motion as to those defendants. Plaintiffs did not assert any facts that would support the application of equitable tolling as to the claims against those defendants. Plaintiffs do not claim, for example, those defendants "actively misled" them, F.H.U., 427 N.J. Super. at 379, or otherwise impeded or interfered with plaintiffs' ability, through the exercise of due diligence, to file a claim within the prescribed time period. As for the discovery rule, balancing the desire to give plaintiffs "their day in court against the fairness to those who

---

[3] The Rosenberg defendants did not participate in this appeal. In a September 21, 2023 letter, plaintiffs' counsel advised this court plaintiffs had "settled this matter" with the Rosenberg defendants, plaintiffs and the Rosenberg defendants were "currently drafting a written settlement agreement," and "[t]he above appeal shall continue against all other remaining [r]espondents." At oral argument of the appeal, plaintiffs' counsel suggested the parties had not finalized the settlement and reminded the court plaintiffs had briefed issues regarding the dismissal of the Rosenberg defendants. Given plaintiffs' counsel's written representations plaintiffs had "settled this matter" with the Rosenberg defendants and that the appeal would "continue against all other remaining [r]espondents," the Rosenberg defendants may reasonably have understood plaintiffs were no longer pursuing the appeal as to them and for that reason did not participate in the appeal. In an abundance of caution, we have considered the appeal as to the Rosenberg defendants and, for the reasons stated in this opinion, affirm the dismissal of the claims against them.

17

must defend stale claims," we conclude the scale leans in favor of these defendants. J.P., 444 N.J. Super. at 526.

We reach a different conclusion with respect to the Levitin defendants. Plaintiffs have articulated a basis for equitable tolling against them: the alleged repeated refusal of a law firm to provide copies of the closing documents to its client. And given those repeated refusals and the alleged attorney-client relationship between the parties, plaintiffs have articulated a basis for the application of the discovery rule as to the Levitin defendants.

Maybe the trial court was right in thinking a "savvy investor" like Ira who has "d[one] these types of transactions before" would have known to obtain and review copies of the closing documents right away and would have taken action against his attorney the first time he failed to turn over the closing documents. Or maybe, contrary to plaintiffs' allegations, an attorney-client relationship did not exist between Ira and the Levitin defendants and plaintiffs had copies of the closing documents long before they claim they did. Those factual disputes are best resolved in an evidentiary hearing. Generally, discovery-rule issues "will not be resolved on affidavits or depositions since demeanor may be an important factor where credibility is significant." Lopez, 62 N.J. at 275; see also Palisades, 230 N.J. at 452 (remanding case for trial court to conduct a Lopez hearing to

18

examine evidence presented and "in its discretion, take testimony from relevant witnesses").

Because the trial court erred in deciding those statute-of-limitation issues without conducting an evidentiary hearing, we vacate the orders granting the motion to dismiss as to the non-defamation claims against the Levitin defendants and denying the reconsideration motion as to those claims. We remand for an evidentiary hearing concerning the factual assertions at issue regarding the application of the discovery rule and the equitable-tolling doctrine as to those claims. We otherwise affirm.

To the extent we have not addressed them, all other points raised on appeal lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed in part; vacated in part; and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division